Eulrich vs. Richter.

*Warner, Ryan & Allen,* for appellants.
*D. J. Parkinson,* for respondent.

## EULRICH VS. RICHTER.

WATERCOURSE.   (1) *Defined.*   (2) *Does not include mere surface water.*   (3) *Owner of land may obstruct flow, when.*   (4)   *Fact of, question for jury, when.*

1. A " watercourse " is a stream of water, usually flowing in a certain direction, in a regular channel, with bed and banks; though it is not necessary that the water should flow *continually,* but the channel may be sometimes dry.

2. The term " watercourse " does not include occasional bodies of surface water descending from the hills at certain seasons, down the hollows and ravines, without any definite channel, during times of rains or the melting of snow and ice.

3. In the case of such mere surface water, not constituting a watercourse, the owner of lower land has a right to obstruct its natural flow over his land by preventing it from coming within his boundaries.

4. The question in this case being, whether water whose flow was obstructed by defendant (as owner of the lower land) was a " watercourse:" *Held,* that upon the evidence this was a question of fact for the jury, and it was error to instruct them as matter of law that the stream was a watercourse.

APPEAL from the Circuit Court for *Winnebago* County.

Action for damages for the alleged erection of a dam across a brook or watercourse, whereby it was alleged, that the defendant had caused the water to set back and overflow the plaintiff's land. Answer, a general denial. The testimony taken on the trial, for the most part, tended to show that the alleged brook was a ravine, through which surface water, which had gathered on the higher lands, ran during the melting of snows, and after heavy rains, and sometimes during a large portion of the summer, but in no regular or defined channel, nor generally so as to hinder the growing of crops in the ravine on plaintiff's land; that the plaintiff had dug or plowed two ditches, one up and down the ravine, and one from his cellar, and run them under the line fence upon the defendant's land; that, thereupon, the plaintiff had erected a dam to prevent the discharge of the waters from such ravine and ditches upon her land. The court instructed the jury in substance that, there being no substantial conflict in the testimony, as to the character of the stream, as a proposition of law, upon the testimony, the *locus in quo* is a watercourse; and the defendant owning land upon it, had no right to dam it up, and set the water back upon the upper proprietors, and was liable for the resulting damages.

*Finch & Felker*, with *Charles Barber*, of counsel, for appellants:

1. The term "watercourse" is well defined. "It consists of bed, bank and water." There is a distinction taken in law between a regular flowing stream of water, which at certain seasons is dried up, and those occasional bursts of water, which in time of freshet or melting of ice or snow, descend from the hills and inundate the country. There must be something more than mere surface drainage. Angell on Watercourses, § 4; *Hoyt v. Hudson*, 27 Wis., 661; *Shields v. Arndt*, 3 Green Ch. R., 234; *Luther v. Winnissimet Co.*, 9 Cush., 171; Washburne on Easements, 209–210 g; *Fryer v. Warne*, 29 Wis., 514; *Bowlsby v.*

*Speer*, 31 N. J., 531.   2. There exists no natural easement in favor of the owner of higher grounds or fields, as to mere surface water, or such as falls or accumulates by rain or melting of snow; and appellant had the right to obstruct and hinder the flow of surface water from the plaintiff's estate upon her land, even if situated in a state of nature, so that it would have received the water. *Pettigrew v. Evansville*, 25 Wis., 228 ; *Hoyt v. Hudson*, 27 id., 656; *Ashley v. Wolcott*, 11 Cush., 192; *Goodale v. Tuttle*, 29 N. Y., 459 ; *Bowlsby v. Speer, supra* ; *Swett v. Cutts*, 9 Am. Rep., 280 and *note* ; *S. C.*, 50 N. H., 439. 3. It was error for the court to charge the jury, as matter of law, that the *locus in quo* was a watercourse.   When the facts are not entirely clear, the case should go to the jury.   3 Wait's Practice, 173.   The case is not within the exceptions laid down in *Hoyt v. Hudson*, 27 Wis., 663.   But whether it was or not was for the jury to decide.   *Smith v. Russ*, 17 Wis., 227 ; *Morgan v. King*, 18 Barb., 277.

*A. Weisbrod*, for respondent, contended that from the evidence, the case at bar had all the requisites of an ancient watercourse as defined in *Fryer v. Warne*, 29 Wis., 511; citing *Gillett v. Johnson*, 30 Conn., 180; *Miller v. Lauback*, 47 Pa. St., 154; *Kauffmann v. Griesemer*, 26 id., 407 and note; *Williams v. Gale*, 3 Harris & J., 231 ; *Martin v. Pett*, 12 La., 501; *Lattimore v. Davis*, 14 id., 161.

COLE, J.   We think the learned circuit court erred in charging, as a proposition of law, that the *locus in quo* was a natural watercourse.   The jury were told that there was no substantial conflict in the testimony with reference to the character of the stream, and that as a matter of law it was a watercourse, which the defendant had obstructed.

The definition of a watercourse, as given by Mr. Angell, and which has been substantially adopted by this court, is, a stream of water consisting of a bed, banks and water; though the water need not flow continually, and there are many water-

courses which are sometimes dry. There is, however, a distinction in law between a regular flowing stream of water, which at certain seasons is dried up, and those occasional bursts of water, which, in times of freshet, or melting of snow and ice, descend from the hills and inundate the country. To maintain the character of a watercourse, it must appear that the water usually flows in a certain direction, and by a regular channel, with banks or sides. It need not be shown that the water flows continually; the stream may at times be dry; but it must have a well defined and substantial existence. Angell on Watercourses, § 4; *Hoyt v. The City of Hudson*, 27 Wis., 656; *Fryer v. Warne*, 29 id., 511.

According to our understanding of the testimony, there is considerable doubt whether it proves a watercourse, within this definition; or whether it did not appear that the water was mere surface water, descending from higher to lower ground, in no defined channel, in times of rain or the melting of snows and ice in the spring. If it was mere surface water, caused by rain or snow, which naturally flowed down the hollow or ravine, but in no defined natural channel having a bed and banks, then it was not a watercourse, and the defendant had the right to use such means as she might deem necessary to keep it off her land. For this court has adopted the common law rule, that the owner of the superior or higher ground has no natural easement or servitude to discharge mere surface water, such as falls or accumulates by rain or the melting of snow on his land, upon and over the land of his neighbor which may happen to be on a lower plane (*Pettigrew v. The Village of Evansville*, 25 Wis., 223; *Hoyt v. The City of Hudson*, *supra*); but that such neighbor has the right to obstruct or change the flow of such water by preventing it from coming within his boundaries.

There was testimony which tended to show that the flow of water down the hollow or ravine from the plaintiff's to the defendant's land was not in any regular channel; that it was

only occasional, and did not prevent the cultivation of the ravine, or the growing of grass there. The plaintiff's land was rolling, and considerably higher than the defendant's, and of course all surface water caused by rains or the melting of snow was discharged from the higher through the lower ground. But there was testimony from which the jury might have found that this flow of water did not constitute a watercourse within the sense of the law ; that it had no well defined channel with a bed and banks, which extended from the land of the plaintiff upon and across the land of the defendant. And this question, whether there was a watercourse there or not, should, we think, have been submitted to the jury upon the evidence, instead of being decided as a proposition of law. Had there been no dispute as to the facts, nor any testimony which tended to show that the *locus in quo* was not a watercourse, and that the rights and duties of proprietors on such a stream had no application, the charge of the court might have been proper. But, upon the testimony, the question should have gone to the jury to determine whether there was a watercourse within the legal definition.

We shall go into no examination of the evidence at the present time, nor express any opinion as to what inference should be drawn from it. The facts of the case are not so clear and undisputed as to warrant the court in withdrawing from the jury the question, whether the *locus in quo* was a natural watercourse.

We therefore think there must be a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and a new trial awarded.