LESSARD vs. STRAM and others.

*December 19, 1884 — January 13, 1885.*

*Obstructing flow of surface water: Watercourse.*

The owner of land is not liable for the injury to adjoining lands caused by the erection of an embankment to protect his own land from overflow by mere surface water, caused by rain or melted snow, flowing through a ravine which at other times contains no running water. Such a ravine is not a watercourse. *Hoyt v. Hudson,* 27 Wis. 656.

APPEAL from the Circuit Court for *Crawford* County. The case is thus stated by Mr. Justice TAYLOR:

" Action to recover damages for the alleged wrongful acts of the defendants in obstructing the flow of the water which issues out of Lhemerie coulie and turning the same upon the lands of the plaintiff.

" The evidence given on the trial shows that Lhemerie coulie is a hollow or ravine worn down through the hills or bluffs on the east side of the Mississippi river, in Crawford county, and that at the mouth of this coulie, and on the south side thereof, the lands of the several parties to this action are situate; the land of *August Stram* being nearly opposite the mouth of the coulie, and the lands of the other parties to the action lying south of his lands. All the lands are lowlands, and lie between the bluffs and the river. The evidence further shows that there is no living stream of water flowing down the coulie or out of the mouth thereof; but that during and for a short time after any considerable rainfall, water flows down said coulie upon the lowlands below the bluffs, and that there never has been any definite channel through such lowlands in which such water was accustomed to flow, but that it spread out over such lowlands. The evidence also shows that until about thirteen years ago the water coming down the coulie, before it reached the lowlands, turned to the north and did not flow

upon the land of either of the parties to this action; that about thirteen years before this action was tried one of the overseers of highways of the town in which the lands in controversy are situated, on the pretense of protecting a highway which passed up said coulie, obstructed the natural flow of the water down the coulie, diverting it to the south, so that it flowed upon the lowlands of *August Stram* and spread out over his land. It also shows that during the same or the next year after the water was diverted by such overseer from its course north to a course in a southerly direction, the defendant *August Stram*, in order to prevent the water from overflowing his lowlands and remaining there to his damage, constructed an embankment or dam from one to three feet in height at the east end of his land, where the water so diverted issued out of the coulie, and such embankment or dam stopped the water near the mouth of the coulie and turned it south along the foot of the bluffs in the direction of the plaintiff's lands.

"The other defendants had lands lying next south of *August Stram's* lands, and they also constructed low embankments across the east ends of their tracts of land so as to continue the flow of the water along the foot of the bluffs towards plaintiff's land, so that the water coming out of the coulie after any considerable rain or after the melting of the snow would and did flow south along the foot of the bluffs until it reached plaintiff's land, where, on account of the formation of the surface thereof, it accumulated and remained stagnant, to his injury.

"That the plaintiff's land was injured by reason of such water flowing thereon was clearly proved, and was not denied by the defendants.

"Upon these facts appearing in the circuit court, upon motion of the defendants the learned circuit judge nonsuited the plaintiff, and from the judgment entered upon such nonsuit the plaintiff appealed to this court."

For the appellant there was a brief by *Thomas & Fuller*, and oral argument by *Mr. Thomas*.

*Wm. H. Evans*, for the respondents.

TAYLOR, J.   The learned circuit judge held that it was clearly established that there was no actual watercourse coming down the coulie, and that all the water that flowed down and out of the same was mere surface waters which the defendants had the right to embank against to prevent their coming upon their respective tracts of land; and that if, in so doing, such water was turned in the direction of the plaintiff's land and flowed thereon, and injured it, it was a case of *damnum absque injuria*, for which no action would lie.   On the part of the plaintiff it was claimed that upon the evidence it was a question of fact for the jury whether there was or was not a natural watercourse down said coulie.

That there was no natural watercourse down the coulie, within the meaning of the law as interpreted by this court in the case of *Hoyt v. Hudson*, 27 Wis. 656, was, we think, clearly shown by the evidence given on behalf of the plaintiff.   One of the plaintiff's witnesses, John A. Fulsom, says: "This water is surface water.   In time of freshets and rains there is a continuous stream of water down that hollow. . . .   This water runs in that channel only when we have rains.   After a rain-storm the water will continue to run from two to twelve hours.   There is no living water there at the mouth of the coulie. . . .   It forms a well-defined watercourse there when it rains.   Whenever it rains there it runs down through the Lhemerie coulie in its certain particular channel to the prairie, which channel has a particular bed and banks."   The plaintiff himself testified that "there is no water running in the ditch all the time nearer than a half mile from the dam.   The water that follows down the coulie to the dam is caused by melting snow and falling rain."   Another witness, Harnes, says he "never saw any

water there, except when it had been raining it ran off." Another witness says: "I never saw any water there except after a rain. Sometimes after a rain the water ran in there for two or three days."

The evidence in this case brings this alleged watercourse clearly within the rule laid down by this court in the case of *Hoyt v. Hudson*, 27 Wis. 656, and it is not such a watercourse as is protected by the law, and for the obstruction of which damages may be recovered by a person injured by its obstruction. In the opinion of this court in that case of *Hoyt v. Hudson*, Chief Justice Dixon says: "The term 'watercourse' is well defined. There must be a stream usually flowing in a particular direction, though it need not flow continually. It may sometimes be dry. It must flow in a definite channel having a bed, sides, or banks, and usually discharge itself into some other stream or body of water. It must be something more than a mere surface drainage over the entire tract of land, occasioned by unusual freshets or other extraordinary causes. It does not include the waters flowing in hollows or ravines in land, which is the mere surface water from rain or melting snow, and is discharged through them from higher to lower levels, but which at other times are destitute of water. Such hollows or ravines are not in legal contemplation watercourses." The learned chief justice then gives a brief abstract of the evidence in that case as to the nature of the watercourse then in question. See pages 661, 662. Such abstract of the evidence shows that the stream in that case was of the same temporary character as the one in question in the case at bar, and that evidence had certainly as strong a tendency to establish the fact of a watercourse as the evidence in the case at bar. After stating the evidence, the learned chief justice, speaking for the court, says: "Such is a statement of all the testimony as given by the witnesses themselves, from which we think it clearly appears that it was a mere occasional flow

of surface water down the ravine or hollow in question, which was obstructed by the agents and officers of the city, and not a stream or watercourse within the meaning of the law on that subject." The rule adopted by this court as to the right of a land-owner to obstruct the flow of surface water upon his land is stated by the chief justice in the following language: " The proprietor of an inferior or lower tenement or estate may, if he choose, lawfully obstruct or hinder the natural flow of such water thereon, and in so doing may turn the same back upon or off on to or over the lands of other proprietors without liability for injuries ensuing from such obstruction or diversion."

The case at bar is, in all its material facts, the same as the case above cited, and must be governed by it. The water obstructed by the defendants, and turned from their lands upon the lands of the plaintiff, was surface water. They did not permit the surface water to collect in large quantities upon their lands, and then discharge them in unusual quantities upon the lands of the plaintiff, so as to bring the case within the rule laid down in the case of *Pettigrew v. Evansville*, 25 Wis. 223; they simply fenced against the surface water from adjoining lands, as they had the right to do; and if in so fencing against such water it was diverted upon the plaintiff's land, he has no action against the defendants. The acts of the defendants being lawful in the eye of the law, any injury suffered by reason of such lawful acts is not a good ground for an action.

The rule laid down by this court in *Hoyt v. Hudson*, above cited, has been adhered to in the following cases: *Pettigrew v. Evansville*, 25 Wis. 223, 238, 239; *Fryer v. Warne*, 29 Wis. 511; *Eulrich v. Richter*, 37 Wis. 226; *Allen v. Chippewa Falls*, 52 Wis. 434; *O'Connor v. F. du L., A. & P. R'y Co.* 52 Wis. 530; *Hanlin v. C. & N. W. R'y Co.* 61 Wis. 515. We see nothing in the facts of this case which would justify us in making it an exception to the general and well-

established rule of this court upon the real question in issue between the parties. It follows that the nonsuit was properly ordered by the circuit court.

*By the Court.*— The judgment of the circuit court is affirmed.