JOHNSON, Respondent, vs. THE CHICAGO, ST. PAUL, MINNE-
APOLIS & OMAHA RAILWAY COMPANY, Appellant.

*November 21 — December 15, 1891.*

*Surface waters: Obstruction or diversion.*

The owner of land, for the purpose of securing or protecting its rea-
sonable use and enjoyment, may obstruct or divert surface waters
thereon, and which have come down from higher levels, by em-
bankments, ditches, drains, culverts, and other constructions, and
in doing so may lawfully hinder the natural flow of such waters
and turn the same back upon or off on to and over the lands of
other owners, without liability for injuries ensuing from such ob-
struction or diversion.

APPEAL from the Circuit Court for *Ashland* County.

Action to recover damages for the diversion and dis-
charge of surface waters upon the premises of the plaintiff.
The facts will sufficiently appear from the opinion. There
was a verdict in favor of the plaintiff, assessing his dam-
ages at $500, and from the judgment thereon the defendant
appeals.

For the appellant there was a brief by *Tomkins & Mer-
rill*, and oral argument by *W. M. Tomkins*. They cited,
besides cases cited in the opinion, *Heth v. Fond du Lac*, 63
Wis. 228; *Turner v. Dartmouth*, 13 Allen, 291; *Barry v.
Lowell*, 8 id. 127; *Dickinson v. Worcester*, 7 id. 19; *Flagg
v. Worcester*, 13 Gray, 601; *Parks v. Newburyport*, 10 id.
28; *Ramsdale v. Foote*, 55 Wis. 560; *Pettigrew v. Evans-
ville*, 25 id. 223; *Sowers v. Lowe*, 9 Atl. Rep. (Pa.), 44;
*Union v. Durkes*, 38 N. J. Law, 21; *Bowlsby v. Speer*, 31 id.
351; 2 Dillon, Mun. Corp. 797 *et seq.;* Gould, Waters, 263
*et seq.; Phillips v. Waterhouse*, 69 Iowa, 199; *Abbott v.
K. C., St. J. & C. B. R. Co.* 53 Am. Rep. 581; *King v.
Pagham*, 8 Barn. & C. 355.

For the respondent there was a brief by *Lamoreux, Glea-*

*son, Shea & Wright,* and oral argument by *E. F. Gleason.* They cited *Pettigrew v. Evansville,* 25 Wis. 223, 229, 230; *Barkley v. Wilcox,* 86 N. Y. 140, 147–8; *Olson v. St. P., M. & M. R. Co.* 38 Minn. 419; *Hogenson v. St. P., M. & M. R. Co.* 31 id. 224; Gould, Waters, secs. 271, 273; *Hicks v. Silliman,* 93 Ill. 255; *Jacksonville, N. W. & S. E. R. Co. v. Cox,* 91 id. 500; *Curtis v. Eastern R. Co.* 98 Mass. 428; *McCormick v. K. C., St. J. & C. B. R. Co.* 35 Am. Rep. 431; *Pye v. Mankato,* 36 Minn. 373; *Lessard v. Stram,* 62 Wis. 112; *Hoyt v. Hudson,* 27 id. 656.

ORTON, J. This action is brought by the plaintiff to recover damages of the defendant company for diverting surface water running across its lands to and over the premises of the plaintiff. The railway track of the defendant runs east and west along the center of Fourth street of the city of Ashland, and the street is between blocks 28 and 29 on the north and blocks 47 and 48 on the south; and the defendant also owns the north half of said last-mentioned blocks, on which it has three side tracks, leaving the main track west of said blocks and running southeast. The premises of the plaintiff are lot 11 in block 28,— the second lot north of Fourth street; and the brother of the plaintiff owns the intervening lot. These blocks lie between Eleventh and Beaser avenues on the east and west,— Eleventh avenue on the east, and Beaser avenue on the west. There is a ravine coming down from the south on the land of the defendant, and running to Eleventh avenue, and thence turning northeast towards the lake, by which surface water, in the time of rains, is carried across the railway track; and just north of the track there is a swale of some depth at the center, which is filled up in the time of rains, and the water runs off in said ravine towards the lake. There is another ravine, or low place, turning towards the northeast from or near the upper end of the other ravine last

mentioned. The defendant made a culvert under its track for the water in the first-mentioned ravine to run off north towards the lake, and cut a ditch along the south side of its track-from near said culvert to a point on Twelfth avenue, to meet another ditch running through the low ground or ravine second above mentioned; and thence there was constructed a box-drain along the south side of the track to carry the water on towards the west, to a point on Fourth street opposite the plaintiff's lot, where a culvert under the track was constructed to carry the water off northwest towards the lake, over and through the plaintiff's lot, after passing the lot of his brother. The track of the Northern Pacific Railway runs east and west along Fifth street, south of Fourth street. There is a ravine from the south of Fifth street and southwest of the southwest corner of block 47, and running northwardly to the last-mentioned culvert, opposite plaintiff's premises, by which surface water is carried through a culvert under the track of the Northern Pacific road, and on through the culvert opposite plaintiff's premises and across the same towards the lake.

These culverts of the defendant under the embankment and track appear to be placed where the surface water formerly passed towards the lake, and there does not appear to have been made very much change in the natural or former running of the surface water towards the lake by the defendant by its ditches, box-drain, and culverts. Perhaps some more water than formerly is made to pass across the defendant's track opposite the plaintiff's premises; but this would seem to be on account of the natural descent of the ground. The plaintiff testified that the water naturally ran across his lot, and that the ground slopes from Fourth street towards his place, and his lot slopes towards his house, and that his house stands in low ground, and that he put in a drain to divert the water from his cellar, and the drain was stopped up when and a week before he brought

Johnson vs. The Chicago, St. Paul, Minneapolis & Omaha R. Co.

this action. He testified also that the water ran across his lot and on northwesterly before the track was laid, and that he and his brother made a dam on the south side of his brother's lot to keep the water from running across the lots, but that it was not high enough in times of heavy rains; and that he built his house in the summer of 1883, and the defendant laid its track opposite his house the same summer.

From this description of the locality it would seem that the defendant company took the only proper measures to pass on the surface water towards the lake, consistent with the building and use of its railway. An embankment along Fourth street was necessary, as that would dam up the surface waters coming across their grounds from the south, in order to pass them off through these culverts a proper distance apart. The ditches and box-drain were necessary to direct the water to the culverts. The plaintiff complains that the company's works retard the running off of the waters from the swale or deep place near Eleventh avenue and south of its track; and that when filled up it is three or four feet deep. It may take longer time for the water to run off when this swale is filled up, but its *depth* cannot injure the plaintiff, for while it stands in the swale it does not run out from the bottom, and only so much can run from its surface, and when low enough it stops running out, and it has to dry up where it is. There is no more surface water running in the ravines and north towards the lake than before the railway was built, and it is now disposed of by the defendant in the only way consistent with the enjoyment of its property. It is not questioned but that the waters which the defendant has to some extent diverted to the premises of the plaintiff consist of mere surface waters, "flowing in hollows or ravines in land, which is the mere surface water from rain or melting snow, and is discharged through them from higher to lower

levels, but which at other times are destitute of water," according to the definition given in *Lessard v. Stram*, 62 Wis. 112. There may be occasionally many small streams or rivulets gathered from the surface, which constitute these surface waters, but none of them are *watercourses*, " which flow in a particular direction, through definite channels, having beds, sides, or banks, and usually discharge themselves into some other stream or body of water." *Hoyt v. Hudson*, 27 Wis. 656.

The true rule in respect to surface waters, as gathered from the cases, is that " the owner of an estate, for the purpose of securing or protecting its reasonable use and enjoyment, may obstruct or divert surface waters thereon, and which have come down from higher levels, ·by embankments, ditches, drains, and culverts, and other constructions; and in doing so may lawfully hinder the natural flow of such waters and turn the same back upon or off on to or over the lands of other proprietors, without liability for injuries ensuing from such obstruction ' or diversion." *Lessard v. Stram*, 62 Wis. 112, is very much in point with this case. " Stram, in order to prevent the water from overflowing his low lands and remaining there to his damage, constructed an embankment or dam from one to three feet in height, at the east end of his land, and such embankment or dam stopped the water near the mouth of the *coulée*, and turned it south along the foot of the bluffs in the direction of the plaintiff's land. Other defendants had lands lying next south of Stram's land, and they also constructed low embankments across the east ends of their tracts of land, so as to continue the flow of the water which, coming out of the *coulée* after any considerable rain, or after the melting of the snow, would and did flow south along the foot of the bluffs until it reached the plaintiff's land, where, on account of the formation of the. surface thereof, it accumulated and remained stagnant, to his in-

Johnson vs. The Chicago, St. Paul, Minneapolis & Omaha R. Co.

jury." On these facts the circuit court granted a nonsuit, and this court affirmed the judgment. The doctrine here sanctioned is that one proprietor may turn and divert surface water from his own land onto the land of another, and such other proprietor may turn and divert the same waters onto the land of his adjacent neighbor, and so on. Each proprietor may thus pass on surface water, and there is no remedy except in doing so. The cases sanctioning this doctrine are too numerous to be cited. *Waters v. Bay View*, 61 Wis. 642; *Allen v. Chippewa Falls*, 52 Wis. 430; *Hanlin v. C. & N. W. R. Co.* 61 Wis. 515; *O'Connor v. F. du L., A. & P. R. Co.* 52 Wis. 526; *Eulrich v. Richter*, 37 Wis. 226; *Fryer v. Warne*, 29 Wis. 511; *Gannon v. Hargadon*, 10 Allen, 106. In *Jordan v. St. P., M. & M. R. Co.* 42 Minn. 172, the railway company cut and dug two large ditches, one on each side of its road-bed, six miles long, and connected them with five large culverts, which accumulated enormous quantities of water by draining the wet lands in the vicinity and from surface waters thereon, and forced the waters to run in large and destructive currents through the ditches and culverts over the lands of the plaintiff, and overflowed them. It was held that the railway company had the right to do this to protect its own lands and property, and that the plaintiff could not recover any damages caused thereby. Many other cases are cited in appellant's brief to similar effect.

The learned circuit court instructed the jury as follows: "The defendant had no right by embankment, drains, ditches, culverts, or other artificial means to collect surface water upon its lands in large quantities, obstructing the natural flow thereof, and by these means causing it to flow in an unnatural manner and increased quantities upon the land of the plaintiff; and if you believe from the evidence that the defendant has, by means of drains, ditches, culverts, or barriers, so obstructed, collected, and diverted the

natural flow of the surface water, as to force an increased quantity upon the plaintiff's land, then the defendant is liable for the injury the plaintiff has sustained on account of such acts of the defendant." This instruction was excepted to by the defendant's counsel. The first part of the instruction is an abstract proposition of law, and not only an improper instruction on that account, but inapplicable to the facts of the case, for the defendant had not "collected large quantities of surface water on its land;" and besides this, it is very bad law in every respect. The last and proper part of the instruction is clearly in violation of the established and uniform doctrine of the books, as we have already shown. If this instruction be the law, then no one can, under any circumstances, divert surface water from his own land for any purpose to the lands of others, to their injury in the least. This instruction was clearly erroneous. There was another instruction excepted to, which is also erroneous, and that is that the plaintiff was entitled to recover as for permanent injury to his land, or as for condemnation of his land to the use of the defendant, by the rule of the difference of its value before and after the ditches, drains, culverts, and embankments were constructed. They may be changed so as to produce no injury to the plaintiff.

The motion of the defendant to set aside the verdict and for a new trial on the ground that the verdict was contrary to the law and the evidence was denied, and exception taken. We have already seen that the verdict is contrary to the evidence as well as the law. The verdict for the plaintiff was $500, and judgment was rendered thereon.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.