CLAUSON, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*March 2 — March 20, 1900.*

*Surface waters: Diversion by railroad: Change of grade: Discharge through ditch: "Pond."*

1. By reason of the lowering of the grade of a railroad, surface water which came upon the right of way from adjoining low lands could no longer be conducted on its natural course by culvert under the track, and was disposed of by conducting it in an ordinary ditch along the side of the roadbed for about half a mile and through a cut to a lower level on the railroad lands, where it spread out, some of it flowing upon plaintiff's land and carrying sand and gravel thereon. *Held*, that such alteration of the flow of the water must be regarded simply as an incident necessarily following the ordinary and lawful use and improvement of the railroad property, and that for the resulting injury to plaintiff's land there is no redress.

2. A "borrow pit" upon the right of way, through which the ditch ran but which did not increase or affect the flow of the water, is *held* not to be a "pond" or "reservoir" within the meaning of the rule, laid down in *Pettigrew v. Evansville*, 25 Wis. 223, and other

cases, that the owner of land on which there is a pond or reservoir of surface water cannot lawfully discharge it by artificial channel directly upon or in close proximity to the land of another, materially to his injury.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

This is an action for the alleged wrongful diversion of surface water, and the discharging of the same in one body upon the plaintiff's land. The facts were practically undisputed, and appeared from the evidence as follows:

In the year 1871 the defendant's railway was built, running in a general southeasterly and northwesterly direction through section 26, township 8, range 9, in the county of Dane, state of Wisconsin. The plaintiff has lands upon both sides of said right of way in said section, his house being situated upon a small parcel of land upon the southwest side of said right of way. The plaintiff's lands are lower than the roadbed of the railway where it passes through them, the roadbed being originally constructed upon a high embankment. Immediately to the southeast of the plaintiff's lands, there is a rise in the ground, through which the defendant's roadbed is situated in a cut; and further to the southeast, and about a half a mile distant from the plaintiff's land, there is again low ground on both sides of the railway track, where there was an embankment of several feet, made at the time of the original construction of the road. At this place the flow of surface water was naturally from the southwest to the northeast, and directly across the defendant's right of way, and a culvert was put in at the time of the original construction of the road, which allowed such surface water which came upon the right of way from the southwest, to pass under the track to still lower grounds in the northeast.

In 1896 the defendant company constructed a new roadbed and, for the purpose of making more easy the grade of

its road, lowered the entire roadbed, at the point where said surface waters had formerly been conducted under the track, several feet, so that such surface waters could no longer flow to the northeast except by flowing over the rails of the track. The roadbed was also lowered for a long distance to the northwest, past the plaintiff's lands, and the cut made deeper, and a ditch made on the southwest side of the roadbed, the result of which was that the surface water flowed along the southwest side of the track in said ditch, through the cut, until it reached a point on the right of way immediately opposite the plaintiff's land, where it spread out upon the surface of the ground, and a part of it ran into the plaintiff's premises, carrying some sand and gravel, and injuring about an acre of land. In its course this ditch ran through an old "borrow pit" upon the right of way, which was somewhat lower than the bottom of the ditch. A small ditch was also put along the top of the embankment on the southwest side of the track, to prevent water flowing down the side of the embankment, and the water from this ditch joined that of the first-mentioned ditch at the northwest end of the cut.

Before any testimony was taken, the defendant demurred *ore tenus* to the complaint, but the demurrer was overruled. At the close of the evidence the defendant moved that a verdict in its favor be directed, and the court submitted to the jury simply the question of damages, which the jury found to be $150. A motion for a new trial was overruled, and judgment entered in favor of the plaintiff for the damages found by the jury, with costs; from which judgment this appeal is taken.

For the appellant there was a brief by *Fish, Cary, Upham & Black*, attorneys, and *Edward M. Hyzer*, of counsel, and oral argument by *Mr. Hyzer*.

For the respondent there was a brief by *Rufus B. Smith* and *John M. Nelson*, and oral argument by *Mr. Smith*.

WINSLOW, J.   The question of the disposal of surface water
as between adjoining owners is one which is not always easy
of solution, notwithstanding the fact that the basic principles
governing the subject are in this state quite well settled.
The doctrine of the common law was definitely adopted by
this court in *Hoyt v. Hudson*, 27 Wis. 656, and that doctrine
has since been closely adhered to, with perhaps a single ma-
terial encroachment which will be hereafter noted.   That
doctrine was there stated to be that the proprietor of the
lower estate may, if he choose, lawfully obstruct or hinder
the flow of surface water thereon, and in so doing may turn
the same back upon, or off onto or over, the lands of other
proprietors, without liability for injuries resulting from such
obstruction or diversion.   This doctrine has been restated
with some differences in language, but none in legal effect,
in numerous subsequent cases.   *Eulrich v. Richter*, 37 Wis.
226;  *O'Connor v. F. du L., A. & P. R. Co.* 52 Wis. 526;
*Waters v. Bay View*, 61 Wis. 642; *Lessard v. Stram*, 62 Wis.
112; *Heth v. Fond du Lac*, 63 Wis. 228; *Johnson v. C., St.
P., M. & O. R. Co.* 80 Wis. 641; *Champion v. Crandon*, 84
Wis. 405; *Borchsenius v. C., St. P., M. & O. R. Co.* 96 Wis.
448.

   This principle grows out of the fundamental right which
a landowner has to improve his own estate so as to fit it for
his own uses.   This right is well stated in *Gannon v. Harga-
don*, 10 Allen, 109, in the following language, which has
been several times approved by this court: " The right of
an owner of land to occupy and improve it in such manner
and for such purposes as he may see fit, either by changing
the surface or the erection of buildings or other structures
thereon, is not restricted or modified by the fact that his
own land is so situated with reference to that of adjoining
owners that an alteration in the mode of its improvement
or occupation in any portion of it will cause water which
may accumulate thereon by rains or snows falling on its sur-

face either to stand in unusual quantities on other adjacent lands or pass into and over the same in greater quantities or in other directions than they were accustomed to flow." Quoted with approval in *Champion v. Crandon*, 84 Wis. 409. A municipal corporation, in the improvement of its streets by paving, grading, and guttering the same, has the same right to obstruct and divert the existing flow of mere surface water that an individual owner has in the improvement of his land. *Hoyt v. Hudson*, 27 Wis. 656; *Allen v. Chippewa Falls*, 52 Wis. 433; *Heth v. Fond du Lac*, 63 Wis. 228; *Waters v. Bay View*, 61 Wis. 642; *Harp v. Baraboo*, 101 Wis. 368. A railroad corporation, in the construction of its roadbed upon its right of way, may divert, obstruct, or alter the flow of surface water in the same way and under the same rules applicable to a private owner or a municipal corporation. *O'Connor v. F. du L., A. & P. R. Co.* 52 Wis. 526; *Hanlin v. C. & N. W. R. Co.* 61 Wis. 515; *Johnson v. C., St. P., M. & O. R. Co.* 80 Wis. 641; *Borchsenius v. C., St. P., M. & O. R. Co.* 96 Wis. 448.

None of these principles would seem to be open to debate at this time in this state, and the only exception to them, if it may be called such, is the rule laid down in *Pettigrew v. Evansville*, 25 Wis. 223, and approved in *Wendlandt v. Cavanaugh*, 85 Wis. 256, and *Schuster v. Albrecht*, 98 Wis. 241, to the effect that the owner of land on which there is a pond or reservoir of surface water cannot lawfully discharge it by artificial channel directly upon or in close proximity to the land of another, materially to his injury. While this rule has perhaps been somewhat modified with regard to the rights of municipalities in improving streets, it still remains the law as to private owners. *Wendlandt v. Cavanaugh, supra.* This distinction or exception may perhaps have its foundation and justification in the principle that, when surface waters so collect in a natural depression or basin forming a pond of some permanency, they thereby

lose their character as purely surface waters and acquire to some extent at least the quality of a watercourse. *Shaefer v. Marthaler*, 34 Minn. 487. Whatever the basis of the rule may be, however, it is now too firmly imbedded in our law to admit of question.

It was claimed upon the argument of this case that the facts brought the case within this principle, but this claim cannot be supported. The complaint contains no reference to the drainage of any pond, but simply charges the diversion of the surface waters which reached the defendant's right of way from other lands, as well as those which fell upon the right of way itself, through a long artificial ditch, and the discharge thereof in one body upon the plaintiff's land. It is true it appeared upon the trial that this ditch, before reaching that part of the right of way adjoining the plaintiff's land, ran through a " borrow pit " upon the right of way, the extent of which was not given, but which was somewhat deeper than the ditch. There is no evidence, however, to show that this circumstance in any way increases or affects the flow of water, but it would rather appear to the contrary. Certainly there is no lake or pond proven, either natural or artificial, which can serve to bring the case within the rule of the *Pettigrew Case.*

The case, then, is this: A railway company, for the better prosecution of its own business, has seen fit to lower the grade of its roadbed, as it had an undoubted right to do. By reason of such change certain surface water which reached its right of way from low lands to the southwest can no longer be conducted on its natural course by culvert under the track and across the right of way to the northeast, nor can such water, for manifest reasons, be allowed to flow across the rails in its wonted direction, but it is disposed of by conducting it in a ditch along the southwest side of the track for about half a mile, and through a cut, until lower ground is reached, when it spreads over the

ground opposite the plaintiff's land, and some of it, carrying sand and gravel, flows upon his land. Is this a legal wrong, or is it simply the lawful exercise of the right to fight surface water for which there is no redress even though some injury may result to an adjoining owner? We think, within the principles already laid down in the decisions of this court, it must be said that this shows simply the exercise of a right. The railroad company had the right to fix the grade of its roadbed as it did, just as a private owner has the right to change the surface or erect structures upon his land for the more complete enjoyment thereof. It is common knowledge that proper ditches are a necessity to the preservation of a roadbed in places where surface water is liable to accumulate; otherwise the roadbed would be in constant danger of being overflowed and washed away, and the safety of the traveler continually threatened. All that was done here was to construct an ordinary ditch by the side of the roadbed for a distance of about half a mile, conforming, of course, to the slope of the roadbed; the said ditch resulting in diverting the surface water which naturally reaches the southwest side of the right of way from its old-time course to the northeast, so that it now flows northwest through a cut to a lower level on the railroad lands. When it reaches this level, it spreads out, and some of it reaches the plaintiff's land, bearing sand and gravel. The proper construction of the roadbed and ditch for railway purposes is not attacked. The right to change the grade of the roadbed must be conceded. The duty to protect the roadbed from inundation by surface water is apparent. If in the exercise of this undoubted right and the performance of this plain duty in a proper manner incidental injury happens to another, it must be regarded as one of the numerous curtailments of natural privileges resulting from the complex relations of civilized life, and not an injury for which the law can provide a remedy.

The case is quite similar in its essential elements to the case of *Johnson v. C., St. P., M. & O. R. Co.* 80 Wis. 641, but more nearly parallel to the case of *Jordan v. St. P., M. & M. R. Co.* 42 Minn. 172 (cited and approved in the *Johnson Case*), in both of which cases the conclusions reached were identical with those now reached by us. The alteration of the ordinary flow of surface water is regarded in those cases and must be regarded in this case simply as an incident necessarily following the improvement of the defendant's own property in the manner in which said property is ordinarily and may lawfully be used and improved.

*By the Court.*— Judgment reversed, and action remanded for a new trial.