HARVIE and others, Respondents, vs. TOWN OF CALEDONIA, Appellant.

*September 15—October 5, 1915.*

*Towns: When bound by election as to nature of controversy: Highways: Surface water: Rights of adjoining owners: Construction of dikes: Obstruction of highway: Ditch to drain highway: Damages: Benefits.*

[1. Whether after a town had notified a landowner that in cutting a dike upon his land adjacent to a highway it was acting under sec. 1236, Stats., and after the town board had appointed appraisers to assess his damages under sec. 1237, and after the landowner had on appeal from their assessment recovered judgment for a larger sum, the town should on appeal from such judgment be held bound by its election to treat the controversy as one governed by said statutes, or might claim that they were inapplicable and that it was not liable for any damages,—is not determined.]

2. A town is not particularly favored in the law over a private proprietor in dealing with surface water, except that it has what is the equivalent of the right of condemnation.

3. At common law the upper proprietor had no easement or servitude in the land of the lower one which entitled him to an unobstructed discharge of surface water on the lower land. The lower proprietor might fight off the flow as best he could, and for that purpose had a right to construct a dike or embankment on his own land so as to keep the water off.

4. If, as an exception to the general rule, a dam or dike may not be built across a narrow valley or ravine where the result would be to submerge a considerable part of the land drained through such valley or ravine,—a point not decided,—the mere fact that land is hilly or that surface water from a considerable area may be drained at a certain place is not sufficient to bring a case within such exception.

5. The easement acquired by a town upon legally laying out a highway does not carry with it a right to the unobstructed flow of surface water over the adjacent lands, and the adjacent proprietors may, by dikes on their own land outside of the limits of the highway, keep back the surface water coming from the highway; and in so doing they do not violate the law as to obstruction of the highway.

6. Under secs. 1236, 1237, Stats., where a drain or ditch is constructed upon land adjoining a highway, damages are recoverable by the owner, but assessment or consideration of "special advantages" is provided for in sec. 1237 only in cases where material is actually taken from the land and placed on the road.

APPEAL from a judgment of the circuit court for Columbia county: CHESTER A. FOWLER, Circuit Judge. *Affirmed*.

For many years the defendant town has maintained a highway running north and south over a low tract of land in said town, and plaintiffs are the owners of forty acres lying west of and adjacent to the highway. Off from the highway in plaintiffs' forty there is a small pond, the slope of the land being from the highway to the pond. Surface water from lands adjacent to the eastern side of the highway flowed onto the highway, and the town built a culvert across the road opposite plaintiffs' pond, thus letting the water onto their land. Plaintiffs then constructed a dike on their property next to the highway to protect it from the surface water. This caused the water to back up onto the land on the opposite side of the road, and the owner thereof in turn constructed a dike on his land at the place where the water from the highway came upon it. As a result the highway was submerged at times of melting snow and heavy rains, and the town authorities went upon plaintiffs' land and cut the dike, causing the water to flow onto their land and into the pond. Plaintiffs were about to repair the dike by filling up the opening, when they received notice from the town authorities that they were acting under sec. 1236, Stats., and would prosecute plaintiffs if they persisted in closing up the dike. Plaintiffs then applied to the town board to have damages assessed, and appraisers were appointed who proceeded to do their work, and their award was duly filed with the town clerk in accordance with sec. 1237, Stats. Being dissatisfied with the award made by the appraisers, plaintiffs appealed to the circuit court. The jury found in favor of

plaintiffs and assessed their damages at $777.50 and costs. From judgment entered in accordance with such verdict defendant appeals.

For the appellant there were briefs by *Rogers & Rogers,* attorneys, and *J. L. Mahoney,* of counsel, and oral argument by *Mr. H. B. Rogers* and *Mr. Mahoney.* They contended, *inter alia,* that the common-enemy rule as to surface water does not apply in a broken and hilly country. *Hoyt v. Hudson,* 27 Wis. 656, 664; *Ramsdale v. Foote,* 55 Wis. 561, 13 N. W. 557; *Waters v. Bay View,* 61 Wis. 642, 644, 21 N. W. 811; *Bowlsby v. Spear,* 31 N. J. Law, 351, 86 Am. Dec. 216; *Swett v. Cutts,* 50 N. H. 439, 9 Am. Rep. 276; *Quinn v. C., M. & St. P. R. Co.* 23 S. Dak. 126, 120 N. W. 884; *Gould, Waters* (3d ed.) § 275; 3 Farnham, Waters, secs. 877, 882, 889*b,* 889*c,* 889*f; Palmer v. Waddell,* 22 Kan. 352; *Gottenetroeter v. Kapplemann,* 83 Mo. App. 290; *Taylor v. Fickas,* 64 Ind. 167, 31 Am. Rep. 114; *Chicago, R. I. & P. R. Co. v. Shaw,* 63 Neb. 380, 88 N. W. 508; *Livingston v. McDonald,* 21 Iowa, 160, 89 Am. Dec. 563; *McClure v. Red Wing,* 28 Minn. 186, 9 N. W. 767; *Grand Junction C. Co. v. Shugar,* L. R. 6 Ch. App. Cas. 483; *Franklin v. Durgee,* 71 N. H. 186, 51 Atl. 911, 58 L. R. A. 112. Dedication or condemnation of land for highway purposes includes an easement for necessary drainage. When a road is legally laid out and constructed, no owner of adjoining land has a right, by embankment, to create an overflow of water upon the highway; otherwise a highway, instead of being a public benefit, would be a public nuisance, and compensation might be twice recovered for the same right. 1 Elliott, Roads & S. (3d ed.) § 259; *Schuss v. Chehalis,* 82 Wash. 595, 144 Pac. 916; *Myers v. Nelson,* 112 Cal. xvii, 44 Pac. 801; 2 Farnham, Waters, sec. 188*a; Bockoven v. Lincoln,* 13 S. Dak. 317, 83 N. W. 335; *Churchill v. Beethe,* 48 Neb. 87, 66 N. W. 992; *Tower v. Somerset,* 143 Mich. 195, 106 N. W. 874; 1 Elliott, Roads & S. (3d ed.) § 556; *Wend-*

*landt v. Cavanaugh,* 85 Wis. 256, 263, 55 N. W. 408; *Schuster v. Albrecht,* 98 Wis. 241, 244, 73 N. W. 990; *Champion v. Crandon,* 84 Wis. 405, 54 N. W. 775; *Clauson v. C. & N. W. R. Co.* 106 Wis. 308, 312, 82 N. W. 146; *Peck v. Baraboo,* 141 Wis. 48, 55, 122 N. W. 740.

For the respondents there was a brief by *Grotophorst, Evans & Thomas,* and oral argument by *Evan A. Evans.*

BARNES, J. After the defendant had cut the dike built by the plaintiffs it notified them that it was lawfully proceeding under sec. 1236, Stats., and that the cut should not be again filled up. The material part of sec. 1236 reads:

"It shall be lawful for any superintendent of highways or any person acting under his direction to enter upon any lands adjoining to or near any highway in his town or district and construct such drains or ditches as may be necessary for the improvement or preservation of such highways."

The plaintiffs then applied for appraisers to assess their damages, acting under sec. 1237, Stats. The material part of this section reads:

"If any owner or occupant of lands so entered upon or used for any of the purposes mentioned in the preceding section shall feel himself aggrieved he may apply to the supervisors of the town, who shall appoint three disinterested electors of such town to appraise the damages. . . . The appraisement of damages so made or the determination not to allow any shall be filed by the appraisers with the town clerk, to be laid before the town board of audit, within ten days after such oath is taken; and in default of such finding the town shall be liable to an action for damages as a trespasser."

Pursuant to this notice the town board appointed appraisers, who found that plaintiffs suffered no damages. Plaintiffs appealed from this award, as provided in sec. 1237a.

There is good reason for saying that the parties in effect agreed that the controversy was one which fairly fell within the provisions of the statutes referred to, and that they

should be bound by their election. As between private parties such would no doubt be an entirely proper rule to apply. If the acts of the town officers were *ultra vires,* however, there are many cases which hold that such acts would not be binding on the town, and inasmuch as it now claims that it was not liable to the plaintiffs for any damages whatever and could not lawfully obligate itself to pay any, we will proceed to discuss the points raised by the appellant on this appeal.

The appellant suggests that the rules of law applicable to surface water as between private parties do not apply to towns and that they have greater rights and privileges in dealing with such water than individuals have, aside from the right of condemnation. If such a distinction exists, it is confined within pretty narrow limits.

"The same principle which governs as between individuals [in dealing with surface water], holds good as between towns and villages and individual proprietors." *Pettigrew v. Evansville,* 25 Wis. 223, 231.

"Cities, towns, and villages, as owners of lands for highways and other purposes, have the same rights as private owners to repel or obstruct the flow of surface water collecting therein from snow and rain." *Champion v. Crandon,* 84 Wis. 405, 407, 54 N. W. 775; *Hoyt v. Hudson,* 27 Wis. 656, 658; *Waters v. Bay View,* 61 Wis. 642, 644, 21 N. W. 811.

"It has been declared to be the law of this state, in *Clauson v. C. & N. W. R. Co.* 106 Wis. 308, 82 N. W. 146, and in other cases there cited, that a municipal corporation, in the improvement of its streets, . . . has the same right to obstruct and divert the existing flow of mere surface water that an individual owner has in the improvement of his land." *Peck v. Baraboo,* 141 Wis. 48, 54, 55, 122 N. W. 740.

These cases, as well as others that might be cited, show pretty clearly that a town is not particularly favored in the law over a private proprietor in dealing with surface water, except that it has what is the equivalent of the right of condemnation.

At common law the upper proprietor had no easement or servitude in the land of the lower one which entitled him to an unobstructed discharge of surface water on the lower land. The lower proprietor might fight off the flow as best he could and for that purpose had a perfect right to construct a dike or embankment on his own land so as to keep the water off. *Hoyt v. Hudson, supra,* p. 659; *Pettigrew v. Evansville, supra,* p. 228; *Eulrich v. Richter,* 37 Wis. 226; *O'Connor v. F. du L., A. & P. R. Co.* 52 Wis. 526, 530, 9 N. W. 287; *Waters v. Bay View, supra; Lessard v. Stram,* 62 Wis. 112, 22 N. W. 284; *Clauson v. C. & N. W. R. Co., supra,* p. 310; *Peck v. Baraboo, supra,* p. 54.

It was conceded that the highway in question was legally laid out. The appellant argues that this concession establishes the fact that the west half of the right of way was secured from the plaintiffs or their predecessors in title by purchase or condemnation, and that in either event the acquisition of the easement carried with it the right to discharge surface water without molestation on the adjacent land, and that compensation for such right was necessarily included in the consideration paid for the easement. A number of cases are cited as sustaining this contention. They do not do so in fact, but deal with the dominion which a town may exercise over the particular strip of land acquired for road purposes.

The town, with certain limitations, had the right to discharge surface water on plaintiffs' land from its roadway. By virtue of such an act the plaintiffs suffered no legal wrong for which they could demand compensation in a condemnation proceeding. *Waters v. Bay View, supra; Champion v. Crandon, supra.* Railroad companies might exercise the same right without liability for compensation. *Hanlin v. C. & N. W. R. Co.* 61 Wis. 515, 21 N. W. 623; *Johnson v. C., St. P., M. & O. R. Co.* 80 Wis. 641, 644, 50 N. W. 771; *O'Connor v. F. du L., A. & P. R. Co.* 52 Wis. 526, 9 N. W. 287; *Clauson v. C. & N. W. R. Co.* 106 Wis. 308, 82 N. W.

146.    It is not to be presumed that compensation was paid for this particular right.    It would be a pure fiction to say that because plaintiffs sold a strip of land for a highway they also sold their right to fight off the surface water coming from the highway, provided their activities were confined to their own land and outside the limits of the road.    The surface water might have been diverted to the east side of the highway as well as to the west side, and if the defendant purchased and paid for an easement for the unobstructed flow of surface water over lands adjacent to the highway it should be able to establish that fact by proof.

Occasions may arise where it is essential that a town should permanently discharge surface water on adjacent land.    The legislature at an early day provided for this situation by giving ample power to do this very thing on the reasonable condition that the resulting damage be paid for.

It is urged that the right to build the dike did not exist here because the general rule of law did not apply to the exceptional situation involved.    In *Hoyt v. Hudson,* 27 Wis. 656, it was suggested but not decided that a situation might arise where a landowner would not have the right to construct a dike so as to obstruct the flow of surface water.    The court has never decided that the exception exists, but neither has it expressly decided that it does not exist.    If it does exist, its application is restricted to very unusual situations.    To use the language of the court, it should be applied, if at all, where "it appears that considerable tracts of land are drained through ravines or narrow valleys, and would otherwise be submerged or greatly injured by the accumulation and presence of surface water, so that the rule would operate adversely to the interests of agriculture and be productive of more harm than good. . . ."    What the court evidently had in mind was that a dam or dike might not be built across a narrow valley or ravine where the building of it would result in submerging a considerable part of the land which drained

through the valley or ravine. The fact that land may be hilly or that surface water from a considerable area may be drained at a certain place is not sufficient to bring a case within the supposed exception. To so hold would materially change existing law and disturb existing rights that are supposed to be firmly established. Surface water flows because of the uneven condition of the earth's surface, and the fact that the unevenness may be due to a hill rather than to a more moderate slope does not ordinarily call for the application of any different rule of law to the situation. The mere fact that surface water flows through a ravine has been held not to affect the general rule. *Eulrich v. Richter,* 37 Wis. 226; *Lessard v. Stram,* 62 Wis. 112, 22 N. W. 284. Neither the proof offered and received nor that offered and rejected, nor both combined, were sufficient to bring the case within the possible exception suggested in *Hoyt v. Hudson,* and therefore we do not find it necessary to decide whether or not such an exception exists.

It is also urged that the dike which plaintiffs built was an unlawful obstruction within the meaning of sec. 1236, Stats., and that plaintiffs were actuated by malice in building it. If, as we hold, the plaintiffs were within their legal rights in building the dike, then it is obvious that they did not violate the law by obstructing the highway. Neither would their motive be very material, although we do not find any evidence of malice. *Johnson v. Ætna L. Ins. Co.* 158 Wis. 56, 147 N. W. 32, and cases cited; *People's L. & M. Co. v. Beyer, post,* p. 349, 154 N. W. 382.

It is further insisted that the court erred in refusing to admit evidence tending to show that plaintiffs were specially benefited by the construction of the road.

Under sec. 1236 the proper town officer may enter any land adjoining or near a highway and cut a ditch when it is necessary to do so to improve or preserve the highway. As to unimproved adjoining lands, the additional right is given

to enter upon them and take stone, gravel, sand, etc., for use in improving the highway, and also to cut and remove wood and trees for a like 'purpose.

Sec. 1237 requires the appraisers to "take into consideration the special advantages, if any, as well as the damages done to said lands by reason of any improvement made on said road by such materials so taken." The assessment of special advantages seems to be confined to cases where material is actually taken from adjacent land and placed on the road. Damages are recoverable where a drain or ditch is cut upon adjoining land, but benefits are not provided for.

*By the Court.*—Judgment affirmed.

TIMLIN, J. I concur in the affirmance of this judgment, but I think it ought to be affirmed on the ground that secs. 1236, 1237, and 1237*a* of the Statutes by clear implication authorize the construction of drains or ditches on lands of abutting owners when necessary for the improvement or preservation of the highway, and recognize the right of the abutting owner to have damages therefor. This would make it unnecessary to determine the controverted question whether such damages are included in the award of damages made when the land was taken for highway purposes or in the release of damages which sometimes takes the place of the award. *Turner v. Dartmouth,* 13 Allen, 291; *Wakefield v. Newell,* 12 R. I. 75; *Chicago v. Taylor,* 125 U. S. 161, 8 Sup. Ct. 820; *Bockoven v. Lincoln,* 13 S. Dak. 317, 83 N. W. 335; 1 Elliott, Roads & S. (3d ed.) § 556 and cases cited. Because, if it is doubtful whether so included or not included, the legislature could and did give this right of recovery by supplemental condemnation proceedings. The alleged rule of the common law by which surface water is said to be a "common enemy" is not, I think, applicable to highways or railroads. These structures, after lawful acquisition of the land upon which they are built, necessitate em-

bankments across lower places where the surface water for-
merly flowed and cuts through the higher places on the sur-
face.   The proportion of level land is small.   The general
surface is wavy or undulating.   The surface thus inter-
cepted by embankment must be carried along in ditches par-
allel with the embankments or cuts until a possible point of
discharge. is reached.   At this point, after being thus col-
lected, it is necessarily discharged often from several differ-
ent small watersheds and in a much increased volume.   So
culverts may be constructed across the embankment in the
lower places and the proprietor or trustee of the road may
be liable for damages for negligent failure to construct such
culverts.   He or it, therefore, cannot by such embankments
dam up against surface water, and he or it can collect the
surface water from several small watersheds and discharge
it in increased volume on adjacent land of others.   Even
the construction of a culvert at the lowest point in a consider-
able watershed will collect the surface water in increased
volume and discharge it upon the lower adjacent proprietor.
The abutting owner cannot on his own land bank up this
culvert and throw the water back on the highway.   I re-
member a case in one of the Southern states where a crimi-
nal prosecution for doing so was sustained on common-law
principles.   So I think the "common enemy" references in
the opinion are misleading.   Besides, it seems to me about
time to begin to straighten out this "common enemy" surface
water tangle in this state.   There never was any such com-
mon-law doctrine.   I shall not attempt to collect authorities.
Many of them will be found collected in 3 Farnham on Wa-
ters, secs. 889*b*, 889*c*, 889*d*, 889*e*, and 889*f*.

   In the section first referred to it is said:

   "There is no general right to fight surface water as a com-
mon enemy.   All rightful acts with regard to it are con-
fined within very narrow limits which have not yet been
fully defined.   And to state generally that such water is a

common enemy, or that there is a right to fight it at common law, cannot be otherwise than misleading."

The ancient and modern English view will be found in Halsbury's Laws of England, vol. 16, p. 113 : "The common law imposes a duty upon occupiers of land adjoining a highway to clean and scour their ditches so as to prevent any nuisance to the highway," citing Bac. Abr. tit. Highway, D., and other authorities.    See, also, *Peck v. Baraboo,* 141 Wis. 48, 122 N. W. 740.    When this court in *Shaw v. Ward,* 131 Wis. 646 (see p. 647, par. 3), 111 N. W. 671, and in *Manteufel v. Wetzel,* 133 Wis. 619, 114 N. W. 91, ruled that the upper proprietor had a legal right to improve his land and rid it of surface water by ditching thereon in the direction of the former flow of surface water down to the adjoining land of the lower proprietor, who in turn possessed a like legal right, it necessarily decided that the lower proprietor could not dam up this ditch and set the same water back again on the lands of the upper proprietor.    That is to say, this court necessarily so decided, unless we are to have the legal paradox, that, as between two private parties, one has a. legal right to do a certain act and another has a legal right to prevent the former from doing the same act; or, what is equivalent, a legal right to frustrate the object and purpose of the exercise of the former legal right which his adversary, as the law says, possesses.    If this is "the perfection of reason," then it is, according to Coke, fit to rank as common law; otherwise not.

I have no desire in this memorandum to do more than note my comments and arouse inquiry on the subject, for in this way law grows and finally perfects itself.