WILLIAMS and others, Respondents, vs. BASS, Appellant.

*December 8, 1922—January 9, 1923.*

*Waters: Natural watercourses: Diverting surface water: Changes and obstructions of watercourse: Rights of adjoining proprietors: Damages: Estoppel: Mandatory injunction.*

1. A stream that usually flows in a particular direction, having a bed, sides, or banks, and discharging into some other stream or body of water, is a natural watercourse; and it does not lose its character even though it passes over low land where it spreads out, having no well-defined banks, but again forms a channel passing into another stream or body of water.
2. Where it appears that both surface water and the natural flow of a stream have been diverted to plaintiff's land, defendant's liability is not affected because he may have had the right to expel the surface waters from his land.
3. While a lower stream owner is entitled to have the water flow down to his land in a natural way, subject to reasonable use by upper owners, he has not the right to so change or obstruct the stream in its natural course as to cause damage to adjoining proprietors.
4. The fact that plaintiff dug a ditch on defendant's land to prevent overflowing of his land due to defendant's action in diverting a stream will not estop plaintiff from recovering damages caused by further changes in the course of the stream by defendant for the purpose of rendering futile plaintiff's attempt to prevent damage, nor will it operate as a waiver of the right to a mandatory injunction requiring restoration of the stream to its natural course.

APPEAL from a judgment of the circuit court for Grant county: S. E. SMALLEY, Circuit Judge. *Affirmed.*

Action to recover damages for the unlawful diversion of a watercourse. The farm of defendant *Bass* was situated west of and adjacent to the land of plaintiffs and also to that of one Brinkman, whose land lay south of the plaintiffs' farm. The watercourse in question at one time extended in an easterly direction across the land of defendant and into the land of Brinkman where it emptied into Pigeon creek, which flowed in a southwesterly direction across the lands of plaintiffs and Brinkman and continued its

course south of the land of defendant. Later it changed its course on the land of defendant and flowed south, emptying into Pigeon creek without touching the land of Brinkman.

Plaintiffs testified that four or five years previous to the bringing of the suit defendant erected a dam in the stream so that the water was diverted along the south line of plaintiffs' cornfield; that plaintiffs asked permission of defendant to cut the ditch deeper on his land so that the water would not run into the cornfield; that the ditch was so cut, but that later, after plaintiff and defendant had had an argument over some other matter, defendant cut another ditch on his land so that the water was diverted into a lower place in plaintiffs' cornfield; that thereafter defendant, whenever there had been a heavy rain, would divert all the water into his last ditch so that it would run into the low place on plaintiffs' land.

Defendant introduced evidence tending to show that the stream itself changed its course to flow along the plaintiffs' land; that he allowed plaintiffs to come onto his land and dig a ditch; that he shoveled dirt and assisted to divert the water into the ditch so dug; that later the water washed out what he had shoveled, and the result had been that the water discharged itself onto the lower land of plaintiffs.

As to the volume of the stream in question, it appeared that during the greater part of the year there was a steady stream fed by springs, but that during very hot and dry weather the stream would practically disappear.

Judgment was ordered requiring defendant to restore the watercourse and to pay to plaintiffs $360 damages.

The cause was submitted for the appellant on the brief of *S. H. Taylor* of Lancaster, and for the respondents on that of *Brennan & Carthew* of Lancaster.

JONES, J. The court found that the stream in question was a natural watercourse which had for years flowed

through defendant's land and emptied into Pigeon creek; that for more than twenty years before the commencement of the action, and before the obstruction, the watercourse, fed by springs, had run in a well defined channel protected by natural banks, and that no part of the natural watercourse had flowed through or upon the land of plaintiffs; that defendant built a dam and diverted the water in such a way as to flow on plaintiffs' land; that plaintiffs with defendant's consent dug a ditch on their own and defendant's land for the purpose of carrying the water to Pigeon creek; and that defendant then diverted the water from this ditch so that it flowed onto plaintiffs' land a little farther north; that but for the diversion caused by defendant the water would not flow upon the land of plaintiffs but would follow the natural watercourse across the land of defendant to Pigeon creek; that as a result of the dam made by defendant the watercourse had, below the dam, become filled with rocks, brush, sand, dirt, and gravel which it would be necessary to remove in order to permit the water to flow in its natural course; and that as a result of these unlawful diversions the corn of plaintiffs had been damaged in the sum of $360.

Defendant denied that he had ever made or authorized the building of the dam in question and claimed that the water changed its course through natural causes. But there is the positive testimony of one witness that he saw defendant digging a ditch in the spring of 1920 leading into plaintiffs' cornfield, and that he saw defendant at different times during that year damming up the water in the old ditch so as to throw it through the ditch he had dug, directly into plaintiffs' cornfield. There was evidence by other witnesses tending to show that the obstruction had been artificially made by the use of trees which had been cut, and by brush. It seems reasonably clear that the defendant was the only person who would be benefited by the change which was made. The trial court had a far better opportunity than

this court to pass upon the demeanor of witnesses and their credibility, and we see no reason to overrule the findings of fact on this subject.

The testimony showed that during times of dry season and drought the stream did not flow to Pigeon creek. But it also showed that for many years it had flowed with a well defined bed and banks and usually discharged into Pigeon creek.

It is argued by appellant's counsel that the court erred in its finding that there was a natural watercourse; that the bed and channel were principally caused by surface water and that the springs were really part of the drainage system of the ravine through which the water flowed; and that it was a case of mere surface-water drainage from which defendant had the right to protect himself.

It is well settled in this state that where a stream usually flows in a particular direction, having a bed, sides, or banks, and discharges into some other stream or body of water, it is a natural watercourse. The stream does not lose its character although it passes over intervening low land where it spreads out, having no well defined banks, but again forms a channel passing into another stream or body of water. Many cases are collected in a decision by Mr. Justice ORTON in which the requisites of a watercourse are discussed. *Case v. Hoffman,* 84 Wis. 438, 54 N. W. 793.

It is urged that most of the damage to plaintiffs was caused by surface water flowing along the bed of the stream and that defendant had the right to expel the surface water from his own land. But there was evidence that before the obstruction there was never any surface water overflowing the land of plaintiffs where the cornfield was located. There was evidence from which the court could properly find that both the water coming from the springs and the surface water were diverted by the acts of defendant from their natural course and thrown upon the land of plaintiffs.

We consider the instant case clearly distinguishable from

those cited and relied on by defendant: cases where it was held that by building embankments or otherwise the owner of land may obstruct the natural flow of mere surface water and prevent its coming within his boundaries. It is unnecessary here to decide whether the plaintiffs would have had a remedy for the diversion of mere surface water if there had been no natural watercourse under the rules laid down in the following cases, cited by defendant's counsel: *Shaw v. Ward,* 131 Wis. 646, 111 N. W. 671; *Clauson v. C. & N. W. R. Co.* 106 Wis. 308, 82 N. W. 146; *Lessard v. Stram,* 62 Wis. 112, 22 N. W. 284; *O'Connor v. Fond du Lac, A. & P. R. Co.* 52 Wis. 526, 9 N. W. 287; *Eulrich v. Richter,* 37 Wis. 226; *Hoyt v. Hudson,* 27 Wis. 656.

The natural desire of landowners to rid themselves of surface waters collected in ponds has been a fruitful cause of litigation in this state. But there has been little question of the general rule that, while the upper owner may make reasonable use of a stream running through his land, the lower owner has the right to have the water of a stream flow down to his land as it is wont to run. On the other hand, the lower owner has no right to so change or obstruct the stream in a natural watercourse as to cause damage to adjoining proprietors. 27 Ruling Case Law, 1091, 1095.

The trial court held that the stream in question was a natural watercourse; that the defendant had so changed its course as to cause damage to plaintiffs, and that it was no defense that surface water had mingled with the natural stream. With this conclusion we agree.

Some claim was made that plaintiff was estopped from recovering damages because with the consent of defendant he had dug a ditch on defendant's land to prevent the overflowing of his own land. There would be more force in this contention if defendant had not later made such changes as to renew the overflow and render futile this attempt of plaintiff to prevent the damage. In our opinion there was no estoppel.

As part of the conclusions of law the court found that plaintiffs were entitled to judgment requiring defendant to restore the natural watercourse to its condition before the diversion and restraining him from further diverting the stream to plaintiffs' damage. It is claimed by defendant that by digging the ditch on defendant's land with his consent plaintiffs had acquiesced in and so delayed to assert their claim as to waive any right to a mandatory injunction.

Such an injunction was the only adequate remedy to prevent future damage. Plaintiffs did not acquiesce in the conduct of defendant which had made the effort to prevent the overflow ineffective, and we do not consider that the plaintiffs should be barred from asserting their right because they had attempted, without litigation, to protect their property.

*By the Court.*—Judgment affirmed.