HETH and another, Respondents, vs. THE CITY OF FOND DU LAC, Appellant.

*April 9 — April 28, 1885.*

*Municipal corporations — Streets and gutters — Injury to lot-owner from surface water — Injunction.*

The resident owner of a lot fronting upon a public street in a city cannot be permitted to restrain such city from constructing drains along the side or culverts across such street, or other streets in the vicinity, or from grading or otherwise improving the same, merely because such acts, when completed, would greatly increase the flow of surface water upon his land.

APPEAL from the Circuit Court for *Fond du Lac* County. The case is thus stated by Mr. Justice CASSODAY:

"This action was brought to restrain the city from opening a culvert across Everett street, on the south line of Second street, and from attempting to carry or drain the waters from the east side of Everett street down along the south line of Second street in front of the property of the plaintiff *McDonald.* The issues were joined, and the cause tried by the court, which made and filed the following findings:

"'1. That the allegations of the bill of complaint are true.

"'2. That the proposed ditch or culvert, which the defendant concedes and admits it is about to dig and open, will cast upon the lands of the plaintiffs large quantities of surface water, which were naturally wont to flow in an opposite direction, and which water so cast, by reason of the omission and neglect to provide means for its escape and discharge by the defendant, will greatly incommode and damage the said plaintiffs whenever a flood or heavy rains occur, by standing upon their door-yards, filling their cellars, or injuring flowers, trees, and shrubbery, and by filling

and flowing upon the streets to the detriment of the public, and by standing until it is removed by process of evaporation, tending to the creation of malaria from noxious vapors, and injuring the public health.

"'3. That said ditch so proposed to be opened, without any means provided for the escape of water thus proposed to be brought down in front of and upon the lots and dooryards of the plaintiffs, will constitute and create at every freshet a public nuisance, from which special damage will inure to the plaintiffs, so often as there shall be heavy rains and freshets.'

"As a conclusion of law the court found that the plaintiffs were entitled to the relief prayed. From the judgment entered accordingly the defendant appealed."

*P. H. Martin*, city attorney, for the appellant, argued, among other things, that the city had a right to construct drains and culverts in the streets to carry off surface water, at such points and places as it deemed most expedient and useful to the public, and would not be liable to adjoining proprietors for any damage they would sustain in consequence of such improvements. *Turner v. Dartmouth*, 13 Allen, 291; *Pettigrew v. Evansville*, 25 Wis. 233; *Hoyt v. Hudson*, 27 id. 656; *Kavanagh v. Brooklyn*, 38 Barb. 232; *Flagg v. Worcester*, 13 Gray, 601; *Fair v. Philadelphia*, 88 Pa. St. 309; *Imler v. Springfield*, 55 Mo. 119; *Laney v. Jasper*, 39 Ill. 46. Even if the culverts across the ravine are not large enough to discharge the water that would reach them, it is no ground for restraining the city from opening the proposed culvert. If the culverts were sufficient when constructed, under the plan or system of drainage, but became insufficient in consequence of growth of the city, improvements, etc., so that in severe rain-storms they overflow, no action lies against the city. *Steinmeyer v. St. Louis*, 3 Mo. App. 256; *Wheeler v. Worcester*, 10 Allen, 591; *Springfield v. Spence*, 2 Am. & Eng. Corp. Cas. 620; *S. C.*

Heth and another vs. The City of Fond du Lac.

39 Ohio St. 665. The city is not bound to provide means of escape for surface water, nor to adopt a system of drainage that will prevent it from flowing from the streets upon adjoining property below the level of the street. *Judge v. Meriden*, 38 Conn. 90; *Hoyt v. Hudson*, 27 Wis. 656; *Allen v. Chippewa Falls*, 52 id. 430; *Gould v. Booth*, 66 N. Y. 62; *Lynch v. New York*, 76 id. 60; 2 Dillon on Mun. Corp. § 1042; *Alden v. Minneapolis*, 24 Minn. 254; *Radcliff's Ex'r v. Brooklyn*, 4 N. Y. 195; *Mills v. Brooklyn*, 32 id. 489. The power to determine upon the necessity for, location, and capacity of culverts, drains, etc., is *quasi*-judicial or discretionary, and courts are bound to presume that municipal officers will exercise such powers properly and so as to avoid unnecessary damage. *Allen v. Chippewa Falls*, 52 Wis. 430; *Mills v. Brooklyn*, 32 N. Y, 489; *Urquhart v. Ogdensburg*, 91 N. Y. 67; *N. Y. & H. R. Co. v. New York*, 1 Hilt. 562; *Des Moines Gas Co. v. Des Moines*, 44 Iowa, 505.

*Edward S. Bragg*, of counsel, for the respondents.

CASSODAY, J. Everett street runs north and south. The first street west of it, and parallel with it, is Harney street. Crossing these streets at right angles, or nearly so, are First, Second, Third, and Fourth streets, numbered consecutively from the north towards the south. The plaintiffs, respectively, own lots and reside upon the south side of Second street and between Everett and Harney,— *McDonald's* lot being the corner lot next to Harney. It appears from the evidence that, from points at a considerable distance south and southeast of the premises in question, the surface of the ground very gradually descends towards the premises of the plaintiffs, and thence northerly to the lake. From a point on the north side of Second street about 200 feet east of Everett street, there is a ravine or depression in the surface of the ground, leading northward to the lake, where

most of the surface water east of Everett street was accustomed to flow. From a point in Fourth street about 200 feet east of Harney, there was a ravine or depression in the surface of the ground, leading northward over the northeast corner of *McDonald's* lot, across Second street through a culvert, and thence to the lake. Along this depression most of the surface water from the west and southwest of Everett street was accustomed to flow. That depression was nearly two feet deeper or lower than the one east of Everett street. The west side of Everett street was about one foot higher than the east side. The result was that the grading of Everett street, the opening of a culvert across it at the point designated, and the construction of a ditch or drain from Everett along the south side of Second street to *McDonald's* lot, would increase the flow of surface water in that direction and upon the lands of the plaintiffs. The threatening of these things, and the alleged insufficiency of the culvert in front of *McDonald's*, and the alleged consequences which would follow, constitute the substance of the complaint in this action.

The law as to surface water is too well settled in this state to admit of further juridical discussion. The resident owner of a lot fronting upon a public street in a city, cannot be permitted to restrain such municipality from constructing drains along the side or culverts across such street, or other streets in the vicinity, or from grading or otherwise improving the same, merely because such acts when completed, would greatly increase the flow of surface water upon his land. *Waters v. Bay View,* 61 Wis. 642; *Allen v. Chippewa Falls,* 52 Wis. 430; *Hoyt v. Hudson,* 27 Wis. 656; *Turner v. Dartmouth,* 13 Allen, 291; *Barry v. Lowell,* 8 Allen, 127; *Dickinson v. Worcester,* 7 Allen, 19; *Flagg v. Worcester,* 13 Gray, 601; *Parks v. Newburyport,* 10 Gray, 28. The same is true with respect to an adjoining landowner changing the surface of his land, or placing obstruc-

tions or embankments thereon, to change the course of surface water thereon. *Lessard v. Stram*, 62 Wis. 112; *Hanlin v. C. & N. W. R. Co.* 61 Wis. 515; *O'Connor v. F. du L., A. & P. R. Co.* 52 Wis. 526; *Eulrich v. Richter*, 37 Wis. 226; *Fryer v. Warne*, 29 Wis. 511; *Gannon v. Hargadon*, 10 Allen, 106. This is plainly the rule of the common law, as distinguished from the civil law. *Ramsdale v. Foote*, 55 Wis. 560. It makes no difference in the application of this rule that land is naturally wet and swampy. 7 Allen, 22. In *Waters v. Bay View, supra*, one of the principal grounds of the complaint was that the village had "permitted a culvert to become filled up, causing water to dam up and flow back upon" the plaintiffs' lands, but it was held that there was no liability. See, also, *Barry v. Lowell, supra.*

The only case in this court which tends in the least to support the contention of the plaintiffs is *Pettigrew v. Evansville*, 25 Wis. 223; and that case, under the findings of the trial court, is certainly exceptional. In that case the trial judge found that all the material allegations of the complaint were true, and the complaint alleged that there was a large pond or body of standing water in the village; that the defendant had commenced the excavation of a large ditch from such waters towards the plaintiff's premises and near thereto, "for the purpose of draining said standing water in and upon said premises; that it was not necessary to so drain said water, either to improve the streets of the village, or for any other purpose connected with the duties of said corporation." Viewed in the light of such findings, the case cannot be regarded as an authority in support of this judgment. Here there was no pond of water, nor anything to indicate that there was no necessity for doing what the defendant threatened to do. The only complaint is against the diversion of surface water, and the consequences thereof. It is surface water, which,

it is found, would, "whenever a flood or heavy rain occurred," stand upon door-yards, fill cellars, injure flowers, trees, and shrubbery, and fill and flow upon streets. True, it is found that such things would tend to create malaria and injure the public health, and would constitute and create, at every freshet, a public nuisance, from which special damage would inure to the plaintiffs. But the evidence does not warrant such findings. Besides, the action is not brought on the theory of the abatement of a nuisance, and the complaint does not contain sufficient allegations to warrant equitable interference. Sec. 3180, R. S., as amended by ch. 190, Laws of 1882; *Denner v. C., M. & St. P. R. Co.* 57 Wis. 221; *Stadler v. Grieben*, 61 Wis. 505. In no event was the city obliged to provide against extraordinary rains and floods. *Allen v. Chippewa Falls*, 52 Wis. 430. Besides, there is no allegation nor proof of any negligence or unskilfulness in doing the work; as in *Spelman v. Portage*, 41 Wis. 144; *Smith v. Alexandria*, 36 Am. Rep. 788. Nor is there any allegation or proof of any defective plan, or want of skill in the planning of the proposed improvement; as in *Evansville v. Decker*, 84 Ind. 325; *S. C.* 43 Am. Rep. 86; *Gould v. Topeka*, 32 Kan. 485; *S. C.* 30 Alb. L. J. 351; *German Theological School v. Dubuque*, 17 N. W. Rep. 153; *Prideaux v. Mineral Point*, 43 Wis. 513. Some courts have held that a defective plan is not a ground of action. *Urquhart v. Ogdensburg*, 91 N. Y. 67, and cases there cited; and cases cited in 32 Kan. 485.

There is no complaint of any malicious act on the part of any of the officers of the city, by which the plaintiffs were injured. The officers of a municipality improving its streets, solely for the public benefit, in an honest, skilful, and careful manner, may, at least to a certain extent, exercise their own judgment and discretion as to the location and construction of drains and culverts, the grading and improving of streets, and the direction in which surface

water shall be compelled to flow. This is certainly sufficient to dispose of this case, and is within all the authorities cited; and to these others may be added. *Smith v. Gould,* 61 Wis. 31; *Harrison v. Milwaukee Co.* 51 Wis. 662–664; *Alexander v. Milwaukee,* 16 Wis. 248; *Methodist P. Church v. The Mayor,* 48 Am. Dec. 540.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded, with directions to dismiss the complaint.