CONNELL, Appellant, vs. STARK, Respondent.

*October 15 — October 30, 1900.*

*Surface waters: Flowing upon adjacent lands: Underdrainage.*

To relieve his farm from surface water which gathered in depressions or low places thereon defendant constructed a system of underdrainage located entirely upon his own land, through which the water was discharged on his own land near a dry run, in which it flowed across the lands of intermediate proprietors to plaintiff's land. Such underdrainage enabled defendant's land to absorb and hold more of the surface waters coming upon it, and the quantity flowing from it into the dry run and upon plaintiff's land was not increased. *Held*, that plaintiff had no cause of action.

APPEAL from a judgment of the circuit court for Washington county: JAMES J. DICK, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *P. O'Meara*, attorney, and *S. A. Connell*, of counsel, and oral argument by *Mr. O'Meara.*

For the respondent there was a brief by *Barney & Kuechenmeister*, and oral argument by *S. S. Barney.*

CASSODAY, C. J.    This action was commenced August 31, 1898, to compel the defendant to remove and fill up certain ditches on his land, and the tiling placed therein by him, and to restore the soil along the lines of the same to its original and natural condition, and to enjoin the defendant from

discharging surface water from his premises onto the premises of the plaintiff by means of ditches or other artificial means, and for damages. The defendant answered by way of admissions, denials, and counter allegations. The following facts appear from the record, and are undisputed, or found by the court at the close of the trial:

The plaintiff has for several years been the owner of 160 acres of land, described, lying about one third of a mile east of the Menomonee river. The natural drainage is westward towards the river, with very little fall, and no natural or artificial watercourse. The defendant has for many years been the owner of sixty acres of land, which corners on the plaintiff's farm on the southeast. The defendant's land lies considerably higher than that of the plaintiff along her south line and south thereof. For many years there has been a public highway running north and south on the east line of the plaintiff's land, and thence south along the west line of the defendant's land. For many years the lands of the respective parties have been used and occupied for agricultural purposes. All of the premises of the defendant are arable and productive land. No part thereof is or was, before being improved as hereinafter found, either swampy, wet, or marshy, except as hereinafter stated. Twenty-one acres of the defendant's land, situated on the west side thereof, has a moderate declination toward the west, and, before the construction of the artificial draws hereinafter mentioned, the surface water which escaped therefrom ran west across the highway mentioned, upon the lands of one Lambrecht, and thence, in a northwesterly direction, to the margin of the plaintiff's land, and then, in a southwesterly direction, across the lands of Lambrecht and others to the Menomonee river. Several years since, Lambrecht made an embankment or dam upon the east side of his lands where the surface water entered the same from the highway, whereby the surface water flowed upon and stood upon such highway. In consequence

:thereof the supervisors of the town directed a ditch to be ·dug along the west side of such highway to the north for the purpose of carrying, and which did carry, such surface water north along the highway, and discharged the same, near the southeast corner of plaintiff's farm, into a natural draw or waterway, crossing the highway there from the ·east. Naturally such surface waters would flow thence west for a short distance along the south margin of the plaintiff's land to a point about eighty-five rods west of such highway, and thence, in a southwesterly direction, onto the land of Lambrecht, such point being the place where such surface water would reach the plaintiff's lands if allowed to flow naturally across the lands of Lambrecht.

About two years before the trial the defendant, for the purpose of improving his lands and farm, and to make his twenty-one acre tract more porous and productive, placed about 125 rods of tiling in the subsoil thereof, the same extending about thirty rods from the highway east into the same, and running along the east side of the highway upon the defendant's lands, and opening upon the lands of the defendant eighteen rods south of where such draw crosses the highway near the northwest corner of the defendant's land, the water flowing therefrom to the north, along the east side of such highway, to such draw. The effect of such underdrainage was to take the waters which would have naturally run across such highway further to the south, as ·stated, and thence along the west side thereof, through such ditch ordered to be constructed by the supervisors, and to ·discharge them at about the same point in such draw, but upon the east side, instead of the west side, of the highway; and from thence such waters flowed to the west and south-westerly, in the manner stated in both cases. The effect of such underdrainage has been and is to make the defendant's lands more porous and productive, to enable the soil to absorb and hold more of the waters which fall upon the same,

and hence to decrease the amount of surface water which would otherwise escape therefrom, so that in consequence thereof the plaintiff now receives, and will continue to receive, less surface water from the lands of the defendant than she did before such drain was constructed.

Upon the east side of the defendant's farm there is situated a depression in the land, the bottom of which is about one foot on an average below the lowest point of the boundary of the same, and the area of such depression is less than one fourth of an acre. Such depression is not, and never has been, in any manner swampy or springy, but before the surrounding land was cleared and cultivated, and before the drainage hereinafter mentioned, some surface water stood upon the same after the melting of snow in the spring, and after heavy rains at other seasons of the year, but never to exceed 2,100 barrels of water, and when there was any overflow therefrom it ran to the north and into such draw, and thence west and over the southern margin of the plaintiff's farm. About fifteen years since the defendant, for the purpose of improving his farm and to render his land more porous and productive, laid drains in the subsoil of his farm, and, among others, placed tiling into and through such depression, leading thence in a northerly direction and stopping upon the defendant's lands about eighty rods from such draw. The effect of underdrainage has been and is to make the land of the defendant more porous and productive, and to enable the soil (particularly such depression) to absorb and hold more of the surface waters which come thereon. Such depression is now tillable and productive, whereas before such underdrainage it was covered with water in the spring of the year, and hard and baked in the summer. The flow of surface water therefrom into such draw is no more, and probably less, than before such drains were placed therein. Such draw is a natural drain for a large area of land extending 175 rods east from where it crosses such high-

way, and running west from such highway three quarters of a mile, to the Menomonee river. Before such draw was artificially changed by the plaintiff's grantors, as hereinafter stated, the same only extended upon the plaintiff's land a short distance west from where it entered the same, and along the south margin thereof, to a point about eighty-five rods west of such highway, and thence went southerly over the lands of Lambrecht and others. The surface water which flows into such draw from such depression enters the same about one half a mile east of the point where the plaintiff claims she is damaged by reason of such surface water, and flows across the lands of two intermediate proprietors before it reaches the lands of the plaintiff at all.

More than twenty years since and before any of the dams, drains, or ditches hereinbefore mentioned were constructed the plaintiff's grantor constructed a deep ditch along the south side of her farm, beginning in such draw where the same entered her farm at the highway near the southeast corner thereof, and extending thence west the whole length of her farm, at the same time throwing all of the earth which was taken therefrom along the north side of the same, thereby making a dam to prevent any flow of surface water into such ditch from the north, the effect of which has been and is to change the direction of the flow of such surface water to such draw, and to prevent it from flowing off from the lands of the plaintiff at the point eighty-five rods west of such highway, and to carry the most of it along the whole length of her farm. In connection with such ditch, the plaintiff's grantor, at the same time, by an extensive system of underdrainage, has led all of the surface waters of a large part of her farm into such ditch. No act of the defendant has ever added perceptibly to the flow of surface water upon the plaintiff's land, and she has suffered no appreciable damage in consequence thereof.

As conclusions of law, the court found that the plaintiff

is not entitled to any relief in this action; that the defendant is entitled to a judgment dismissing the complaint and for his costs in this action; and ordered judgment to be entered accordingly. From the judgment so entered the plaintiff brings this appeal.

The findings seem to be well supported by the evidence. It is conceded that in the state of nature the surface water from a large portion of the defendant's lands naturally flowed across the lands of other intermediate proprietors, and from thence upon the lands of the plaintiff. The real issue tried is whether the defendant, by the system of underdrainage mentioned, unlawfully increased the flow of surface water upon the plaintiff's land, to her damage. The expert evidence is to the effect that such underdrainage made the defendant's land more porous, and therefore it more readily absorbed heavy rainfalls, and hence decreased the amount of surface water flowing from his land. The court's findings are to that effect, and hence are sustained by such expert evidence. That, of itself, would seem to be sufficient to bar the relief sought in this action.

The facts presented are broadly distinguishable from those present in the recent cases in this court wherein it was held that the plaintiff had acquired the right to have surface water flow in an artificial channel on the defendant's land by adverse user and prescription. *Wilkins v. Nicolai*, 99 Wis. 178; *Roberts v. Von Briesen*, 107 Wis. 486. Here the defendant seeks to relieve his farm from surface water being gathered in depressions and low places thereon by a system of underdrainage, located entirely on his own land, and through which such surface water is discharged on his own land, near a dry run or draw, as it is called in the findings, and in which it flows westerly for a considerable distance, to the place where it is claimed the plaintiff's lands are damaged. The contention of the plaintiff brings the case squarely within the rule of law announced by the Massachusetts

court long ago as follows: "The right of an owner of land to occupy and improve it in such manner and for such purposes as he may see fit, either by changing the surface or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his own land is so situated with reference to that of adjoining owners that an alteration in the mode of its improvement or occupation in any portion of it will cause water, which may accumulate thereon by rains and snows falling on its surface or flowing onto it over the surface of adjacent lots, either to stand in unusual quantities on other adjacent lands, or pass into and over the same in greater quantities or in other directions than they were accustomed to flow." *Gannon v. Hargadon*, 10 Allen, 109. See, also, *Franklin v. Fisk*, 13 Allen, 211; *Cassidy v. O. C. R. Co.* 141 Mass. 174, 178. That rule has frequently and recently been sanctioned by this court. *O'Connor v. F. du L., A. & P. R. Co.* 52 Wis. 526, 531; *Heth v. Fond du Lac*, 63 Wis. 228, 232; *Johnson v. C., St. P., M. & O. R. Co.* 80 Wis. 641, 646; *Champion v. Crandon*, 84 Wis. 405, 409; *Clauson v. C. & N. W. R. Co.* 106 Wis. 308, 311.

Under the rule stated, there is certainly no ground for relief in this action. Besides, it is quite evident that the increased flow of surface water of which the plaintiff complains is caused wholly, or at least in part, by the ditch mentioned as being constructed by the plaintiff on the south side of her farm.

*By the Court.*— The judgment of the circuit court is affirmed.

For a note on rights as to flow of surface water, see *Gray v. McWilliams* (98 Cal. 157), in 21 L. R. A. 593.— REP.