SHAW and others, Appellants, vs. WARD and another, Respondents.

*April 15—April 30, 1907.*

*Waters: Right to discharge surface water upon lands of others: Damages: Equity.*

1. The common-law doctrine as to the right of a landowner to protect his premises from surface water and to rid the same thereof in a reasonable way, even though consequential injuries may thereby be caused to other lands, is the law of this state, subject only to the limitation declared in *Pettigrew v. Evansville*, 25 Wis. 223, that one landowner cannot rightfully collect surface water on his premises in a reservoir and then discharge the same directly upon or near to the lands of another so that it will reach such lands in a large volume to the material injury thereof.

2. The mere change of the surface of one's premises where reasonably necessary to cause surface water to flow therefrom by the natural course of drainage, even to the extent of causing it to pass to adjoining lands in a ditch, is not an accumulation of water and casting of it upon adjoining land within the doctrine of *Pettigrew v. Evansville, supra.*

3. Defendants' lands contained a basin or depression to which surface waters from surrounding lands as well as their own flowed and in which, under natural conditions, such waters were to some extent retained except when, in periods of drouth, they evaporated or were absorbed into the ground.     When the waters in the basin reached a certain height they overflowed through an old ditch or draw across defendants' lands and the lands of others (including plaintiffs) to a creek some distance away.  *Held*, that defendants had the legal right to prevent such accumulation and retention of surface waters on their land by causing the same, by such means as were reasonably necessary—such as the digging of a ditch or the deepening of the existing one,—to flow in the natural course of drainage to and upon adjoining lands, and for injuries to other lands caused by their so preventing subsequent accumulation of surface water on their own lands they are not liable.

4. If there was any liability in such a case for injuries to the lands of plaintiffs caused by the discharge, at the time of opening a ditch into the basin, of the waters then accumulated therein, which passed to plaintiffs' lands across the lands of others in an artificial drain for which defendants were not responsible and at a time when plaintiffs were in the attitude of assenting to the existence of such drain and ditch as a town drain, such liability is not an independent ground for equitable interference nor enforceable in an action to compel a restoration of the former condition.

APPEAL from a judgment of the county court of Jefferson county: GEORGE GRIMM, Judge.  *Affirmed.*

Equitable action for a mandatory injunction compelling defendants to close up a ditch made to drain surface water from their lands whereby it flowed by way of adjoining lands to the lands of appellants, and to recover damages.

The facts as found by the court are as follows:

"1.  That the plaintiffs are owners in common of the N. W. ¼' of section 30 and other lands in the town of Cold Spring, and of the E. ½ of the S. W. ¼ of the S. E. ¼ of section 24, in the town of Koshkonong, all in said Jefferson county; and that the defendant *John Kyle* is the owner of the S. W. ¼' of said section 24, and the defendant *Michael Ward* is the owner of the west ½ of the N. W. ¼ of section 25 in said town of Koshkonong; and that said parties have been the owners and occupants respectively of said lands for more than five years prior to the commencement of this action.

"2. That there is a natural reservoir or pond covering from five to fifteen acres of land, about one half of which is in the S. W. corner of said one-fourth section owned by the defendant *Kyle,* and the other half in the northwest corner of said eighty acres owned by the defendant *Ward.*

"3. That said reservoir or pond is in the center of a basin of several hundred acres of land surrounded by uplands sloping towards said basin.

"4. The natural outlet for the waters accumulating in said basin is southeasterly from said lands owned by the defendants across the land owned by the plaintiffs in the town of Cold Spring, and into Galloway creek.

"5. That the lands of the defendants lie approximately thirty-seven feet higher than said Galloway creek, and fifteen feet higher than the town-line road between the towns of Koshkonong and Cold Spring.

"6. That for many years prior to the injury complained of in this action there existed an artificial ditch running from said reservoir or pond southeasterly substantially upon the line of the ditch or drain now complained of, and had prior to the construction of the new ditch to a considerable extent filled up through natural sources.

"7. That said reservoir or pond when filled from melting snow or heavy rains to a depth in excess of one foot would overflow down and along said old ditch and upon the course of said new ditch, but that said old ditch was not of sufficient depth to entirely drain said pond or reservoir, but would leave the water therein to a depth of about one foot to soak into the soil or evaporate.

"8. That prior to the construction of said new ditch said pond dried out only during periods of long-continued drouth.

"9. That the plaintiffs' twenty-acre tract in said section is about four feet lower than said reservoir and basin, but that it is marsh land and was, prior to the construction of the ditch complained of, at times to a large extent covered by water.

"10. That near and east of said reservoir or pond there was a smaller depression located upon the land of the defendant *Kyle.*

"11. That prior to the construction of the ditch herein complained of, to wit, in the spring of 1903, the defendant *Ward* proceeded to clean out and deepen the said old ditch upon the

lands of the defendant *Kyle,* commencing at the east bound-
ary line, and did clean out and deepen the same up to said
little pond; that one Chesebro, owning marsh land adjoining
said twenty-acre tract of the plaintiffs in said section 24 and
between which lands said old ditch ran, complained in person
to said *Ward* that cleaning and deepening of said old ditch
was injuring his marsh by carrying an unusual amount of
water thereon; and that thereupon it was agreed between said
*Ward* and Chesebro to stop work until a drain could be con-
structed by authority of the town board. .

"12. That thereafter, to wit, on the 20th day of June, 1903,
application was duly made to said town board to lay out and
construct a town drain upon the line of the ditch or drain
herein complained of, and that on the 31st day of July, 1903,
said town board made an order for the laying out of said ditch
or drain, and on the 19th day of August, 1903, filed the usual
maps and surveys together with an order assessing the bene-
fits and damages of the respective parties, etc.

"13. That there was assessed to the plaintiffs herein upon
their said twenty-acre tract of marsh the sum of $74.06 as
benefits.

"14. That said plaintiffs thereafter themselves dug and
constructed a large section of said ditch or drain so laid out
by said town board, and herein complained of, which adjoined
their lands, and were paid therefor by a town order in an
amount a little less than the benefits assessed against their
said lands, and which money so paid to them was collected
from them through the tax list.

"15. That said ditch or drain herein complained of was sub-
stantially completed from the town line between the towns of
Koshkonong and Cold Spring, up to and beyond the plaintiffs'
said twenty-acre tract, and up to and into the lands of the de-
fendant *Kyle,* during the summer and fall of 1903, but that it
was not fully extended into said reservoir or pond and to its
western limit until the spring of 1904.

"16. That prior to the commencement of this action said
ditch or drain had completely emptied said reservoir or pond
on defendants' lands and that the area formerly occupied by it
has become plough land suitable for general farming purposes
and that the digging of the west end of said ditch, by which
said pond was finally emptied, was done by the defendants.

"17. That the spring and summer seasons of 1904 and 1905 were unusually wet, *i. e.* that there was an unusual amount of rainfall.

"18. That by reason of the completing of said town drain into said reservoir or pond and by reason of said excessive rains an unusual amount of water passed through said ditch or drain during the said season of 1904 and 1905, and more rapidly than it would have passed if said ditch or drain had not been opened, and that by reason thereof plaintiffs' lands in the town of Cold Spring lying between the said town line and said Galloway creek had thrown upon them more water than a small ditch therein, leading across the same, was able to carry, and that a tract of about fifteen acres of marsh land thereby became unusually wet and soggy, and was injured for pasturing and other farming purposes.

"19. That said small ditch across plaintiffs' land last referred to, prior to the spring of 1904, had become partly closed up by cattle walking through the same and by natural sources, and that by reason of some soil being carried down through said drain or ditch said small ditch became almost wholly closed; that a causeway about twelve rods in length built across the fifteen acres on plaintiffs' land last referred to, was washed away and became useless, and that by reason of the washing away of said causeway plaintiffs lose the use for pasturing purposes of a five-acre tract of land lying southerly and somewhat higher than said fifteen acres.

"20. That plaintiffs suffered damages by reason of the construction of such ditch to their said lands in the town of Cold Spring and by reason of the partial filling up of the small ditch across the same and the washing away of said causeway in the sum of $125, prior to the commencement of this action.

"21. That by reason of said ditch or drain, about sixteen acres of plaintiffs' twenty-acre tract in section 24 before referred to were materially benefited, to wit, in the sum of $50, prior to the commencement of this action.

"22. That if said small ditch be reopened (the expense of which I include in my finding of paragraph 20) the plaintiffs will suffer no future damages in excess of the benefits which will accrue to their twenty-acre tract in the town of Koshkonong.

"23. That during the laying out of said ditch or drain and during the construction thereof, of all of which plaintiffs had knowledge, they brought no proceedings to prevent the same.

"24. After the greater part of said damage had been done to plaintiffs' low lands in the town of Cold Spring (which I find was in the spring of 1904, when the pond was tapped and emptied by completing the ditch as laid out), to wit, on the 15th day of November, 1904, the plaintiffs presented to this court a petition for a writ of *certiorari* to bring up for review and determination the proceedings of said board of supervisors of the town of Koshkonong relating to the laying out of said ditch; that such writ was issued and returned; and that such proceedings were had thereafter, to wit, on the 27th day of April, 1905, that this court adjudged the proceedings of said town board in laying out said town ditch or drain (the drain or ditch herein complained of) to be null and void for the reason, among other things, that said board had not found that said ditch or drain would conduce to the public health or welfare.

"25. That a notice signed by the plaintiffs, marked 'Exhibit 8' and directed to the defendant *Michael Ward* and to one A. Chesebro and others, notifying them that the proceedings of the town board of supervisors in laying out the said ditch or drain had been judicially declared void and requiring them to discontinue said ditch or drain, was served on the defendant *John Kyle* on or about the 12th day of May, 1905; that a similar notice also signed by the plaintiffs, marked 'Exhibit 9,' was served on defendant *Michael Ward* in the spring or summer of 1905."

Upon such findings it was concluded, as matter of law, as follows:

"The plaintiffs by reason of participating in constructing the ditch and not preventing its construction by moving in a reasonable time and before defendants had expended a large amount of money or labor are estopped from recovering damages which the same has caused and from having equitable relief as prayed for in the complaint. The defendants are entitled to judgment dismissing the complaint with costs."

Judgment was entered accordingly.

The cause was submitted for the appellants on the brief of

*L. B. Caswell* and *W. H. Rogers,* and for the respondents on
that of *Edwin T. Cass,* attorney, and *Harlow Pease,* of coun-
sel.

MARSHALL, J. The findings are somewhat involved. In
the second paragraph it is said, there is a natural reservoir or
pond covering five to fifteen acres on respondents' lands, and
in the sixteenth finding it is said, prior to the commencement
of this action the territory formerly covered by water and con-
stituting the bed of the pond had become dry land suitable for
agricultural purposes. From the findings as a whole, how-
ever, it is quite clear that this is the situation: There is on
respondents' lands a depression covering several acres and of
the depth of about one foot, toward which, under natural con-
ditions, surface water from a considerable territory, includ-
ing lands of respondents, flowed and in which the same, to
the level of a draw to the east, was retained, the surplus en-
tering such draw and flowing somewhat southeasterly to and
onto lands adjoining on the east; thence across the latter lands
for a distance of half a mile or more to lands of appellants
claimed to have been damaged; thence, except as retained on
such lands, flowing further on to Galloway creek east of such
lands. The water retained in the depression or basin as afore-
said did not constitute a permanent body. It was not fed to
any extent by springs, but was mere surface water which in
times of dry weather disappeared by evaporation or absorp-
tion into the ground. The damage caused to appellants by
discharging the water accumulated in the basin, at the time
the ditch was opened into it, was produced long before the
action was commenced and at a time when appellants were in
the attitude of submitting to the existence of the improve-
ment, and by the water reaching their lands in the artificial
course for which respondents were not responsible. If there
is any liability for such damages, under the circumstances, it
is not an independent ground for equitable interference nor

enforceable in an action to compel a restoration of the former condition, if a continuance of the improvement of respondents' lands be not wrongful as to appellants. That is deemed too clear to require discussion. For, a considerable period of time before this action was commenced there was no pond of water on respondents' lands and none will be accumulated there in the future unless the flow to the adjoining lands be prevented.

From the foregoing it will be seen that the major purpose of this action is not to prevent the casting of a pond of water, accumulated on respondents' lands, therefrom, resulting in its reaching appellants' lands to their damage, but is to compel the restoration of the reservoir on the former's lands so the surface water falling or flowing thereon will, as formerly, be there retained instead of passing to the lands of the adjoining owners and thence to those of appellants.

Thus the case really involves the question of whether respondents have a legal right, for the purpose of enjoying their own lands for the use the same are adapted to, to prevent surface water cast thereon, largely from the premises of others, from accumulating and remaining in the depression referred to, by causing the same to flow by the natural and necessary course of drainage to adjoining lands, by way of which, through an artificial course for which respondents are not responsible, the same reach the lands of appellants.

Enough has been said to show that the doctrine of *Pettigrew v. Evansville,* 25 Wis. 223, as it has been limited, and similar cases, viz.: that one landowner cannot rightfully collect surface water on his premises in a reservoir and then discharge the same directly onto the land of another to his injury, or onto land near the premises of another so that it will reach the same in a large volume to the material injury thereof, do not fit the case, but the common-law doctrine, so often approved by this court, in respect to the right of one landowner to defend his premises against and rid the same of

surface water, though consequential injuries may thereby be caused to other lands, subject to the limitation mentioned in *Pettigrew v. Evansville, supra,* governs the situation.

The following statement of the common-law rule early announced by the Massachusetts court in *Gannon v. Hargadon,* 10 Allen, 106, 109, has been quoted here with approval on many occasions:

"The right of an owner of land to occupy and improve it in such manner and for such purposes as he may see fit, either by changing the surface or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his own land is so situated with reference to that of adjoining owners that an alteration in the mode of its improvement or occupation in any portion of it will cause water, which may accumulate thereon by rains and snows falling on its surface or flowing onto it over the surface of adjacent lots, either to stand in unusual quantities on other adjacent lands, or pass into and over the same in greater quantities or in other directions than they were accustomed to flow."

There is some language in *Borchsenius v. C., St. P., M. & O. R. Co.* 96 Wis. 448, 71 N. W. 884, perhaps not wholly in harmony with that rule, but it will be seen that the opening lines of the opinion state the right involved quite as broadly as it is stated in the quoted words. This is the language used:

"Surface water is recognized as a common enemy, which each proprietor may fight off or control as he will or is able, either by retention, diversion, repulsion, or altered transmission; so that no cause of action arises for such interference, even if some injury occurs, causing damage."

That is followed by the statement, in effect, that such general rule has its limitation, as declared in *Pettigrew v. Evansville,* 25 Wis. 223, the scope of which, however, is not stated with perfect accuracy. We shall not discuss at length *Borchsenius v. C., St. P., M. & O. R. Co.,* though will say, in passing, that the doctrine of this court on the subject treated is much more accurately stated in other cases. The right of a landowner as to protecting his premises from surface water

·extends to expulsion of all such water coming upon such
premises by flowing from other lands or otherwise, and of re-
pulsion as well, subject to the precise limitations covered by
the decision in the *Pettigrew Case,* and to the reasonable exer-
·cise of the right.

The common-law rule as it has been quoted is in express
terms or effect, subject only to the limitation stated, fully ap-
proved in the following cases: *Lessard v. Stram,* 62 Wis. 112,
22 N. W. 284; *Heth v. Fond du Lac,* 63 Wis. 228, 23 N. W.
495; *Johnson v. C., St. P., M. & O. R. Co.* 80 Wis. 641, 50
N. W. 771; *Champion v. Crandon,* 84 Wis. 405, 54 N. W.
775; *Clauson v. C. & N. W. R. Co.* 106 Wis. 308, 82 N. W.
146; *Connell v. Stark,* 108 Wis. 92, 83 N. W. 1092.

The mere change of the surface of one's premises where
reasonably necessary to cause surface water to flow therefrom
by the natural course of drainage, even to the extent of caus-
ing it to pass onto adjoining premises in a ditch, is not under-
stood to be the accumulation of water and casting it upon
adjoining land within the doctrine of *Pettigrew v. Evansville,*
*supra,* as will be seen by an examination of the opinions in
*Johnson v. C., St. P., M. & O. R. Co.* and *Clauson v. C. & N.*
*W. R. Co.*

While there is much authority that the common-law rule is
not to be so understood as to permit an upper proprietor under
any circumstances to expel surface water from his premises
as it comes thereon in a stream, it is considered that the logi-
·cal scope of such rule and its reasonable administration ex-
tends to doing so, where there is no other reasonable means
of the landowner enjoying his property for the purposes for
which it is adapted and especially where there is no great
damage to the lands of others not avoidable by the exercise
of the same right. That is to say, so long as a landowner acts
reasonably in ridding his premises of surface water the com-
mon-law rule should be applied as it reads, subject to the one
exception mentioned in *Pettigrew v. Evansville, supra.* The

position of this court in respect to the matter is tersely stated in the headnote to *Johnson v. C., St. P., M. & O. R. Co., supra,* thus:

"The owner of land, for the purpose of securing or protecting its reasonable use and enjoyment, may obstruct or divert surface waters thereon, and which have come down from higher levels, by embankments, ditches, drains, culverts, and other constructions, and in doing so may lawfully hinder the natural flow of such waters and turn the same back upon or off on to and over the lands of other owners, without liability for injuries ensuing from such obstruction or diversion."

The court in the opinion said:

"The doctrine here sanctioned is that one proprietor may turn and divert surface water from his own land onto the land of another, and such other proprietor may turn and divert the same waters onto the land of his adjacent neighbor, and so on. Each proprietor may thus pass on surface water, and there is no remedy except in doing so."

The doctrine as above stated has been very broadly applied in some other jurisdictions, notably in Minnesota. *Jordan v. St. Paul, M. & M. R. Co.* 42 Minn. 172, 43 N. W. 849; *Sheehan v. Flynn,* 59 Minn. 436, 61 N. W. 462; *Gilfillan v. Schmidt,* 64 Minn. 29, 66 N. W. 126; *Oftelie v. Hammond,* 78 Minn. 275, 80 N. W. 1123. *Sheehan v. Flynn* carried such doctrine much farther than is necessary in this case. There was on the defendant's land a depression into which surface water naturally accumulated till it covered about twenty-four acres, and to the depth of about four feet at the lowest point of such depression, the surplus flowing over the brink of the depression and down a natural draw off from the defendant's land. The water in the basin, in times of dry weather, entirely disappeared, as in this case. The proprietor tapped the basin by a ditch about ninety rods long and of a sufficient depth to empty the reservoir and to thereafter prevent the surface water from accumulating. By way of the ditch water passed off from defendant's land and in its course,

thereafter, reached the plaintiff's land, to its injury and his damage to some extent. The court held that under all the circumstances the defendant only exercised the right to reasonably enjoy his own property, not doing any unreasonable or unnecessary injury to the property of others.

It is recognized by some writers, as perhaps the fact is, that this court has taken a very broad view of the common-law rule. So far as it is thought that the court has gone beyond such rule such writers, it seems, are mistaken. We observe that it is said in the note to *Gray v. McWilliams,* 21 L. R. A., at page 600:

"The Wisconsin court has reached a peculiar position on this question. While professing to follow the so-called common-law rule of noninterference it has decided that surface water on one's premises, including that which has been thrown there from higher land, may be lawfully drained and diverted from such land to the land of another, and the only remedy of the latter is to pass it on to other lands."

The mistake, it seems, lies, chiefly, in the idea that the common-law rule is confined to noninterference. Certainly the doctrine that surface water is a common enemy which every proprietor may fight or get rid of as best he may, and that "the right of an owner of land to occupy and improve it in such manner and for such purposes as he may see fit, . . . is not restricted or modified by the fact that his own land is so situated . . . that an alteration in the mode of its improvement or occupation . . . will cause water, which may accumulate thereon by rains and snows falling on its surface or flowing on to it over the surface of adjacent lots, either to stand in unusual quantities on other adjacent lands, or pass into and over the same in greater quantities or in other directions than they were accustomed to flow," cannot be legitimately confined to noninterference. The comment referred to on the position of this court is merely the result, it seems, of a too narrow view of the common-law rule. Here it is

Vol. 131 — 42

given the legitimate effect, it is thought, which the language employed to state it in *Gannon v. Hargadon,* 10 Allen, 109, suggests.

No reason is perceived why respondents could not rightfully have filled up the depression on their lands preventing the water from accumulating thereon and causing it to pass on to the east and reach appellants' lands by way of the ditch, or to have at any time opened the basin into the draw, or a ditch if necessary, to the east and emptied the reservoir, being responsible, if at all, for the damages thus caused to others, but not for damages caused by the improvement preventing surface water from subsequently being retained on their lands, or, at a time when the pond had disappeared by evaporation and absorption, have opened the basin towards the natural draw so as to prevent a future accumulation.

From the foregoing it seems that the judgment appealed from is right regardless of the precise ground upon which the trial court based it. Respondents have a legal right, as we have seen, to rid their lands of surface water as it comes thereon from any source by permitting or causing the same, by such means as may be reasonably necessary, to flow in the natural course of drainage to and onto adjoining lands, though the same may by natural or by artificial means for which they are not responsible reach and spread out over appellants' lands. In so doing they but exercise the common right of every person to defend his premises against surface water. If consequential damages, from the exercise of such right, occur to appellants, they are remediless except by the exercise of the same right, so far as conditions render that feasible, upon their own premises.

*By the Court.*—The judgment is affirmed.