Vick, Respondent, vs. Strehmel, imp., Appellant.

*November 8—December 4, 1928.*

For the appellant there was a brief by *G. E. Bunsa* of Columbus, attorney, and *Grady, Farnsworth & Walker* of Portage, of counsel, and oral argument by *Walter H. Farnsworth*.

For the respondent there was a brief by *Stephens & Morrison* of Columbus, attorneys, and *Bagley, Spohn & Ross* of Madison, of counsel, and oral argument by *Myron Stevens* of Madison.

CROWNHART, J. In *Pettigrew v. Evansville*, 25 Wis. 223, the court held that "the owner of land on which there is a pond or reservoir of surface water cannot lawfully discharge it through an artificial channel directly upon the land of another, greatly to his injury." This is the leading case on the subject in Wisconsin.

From that time on, until. *Schuster v. Albrecht*, 98 Wis. 241, 73 N. W. 990, there were a number of cases concerning the general subject. These cases were submitted to the court in the briefs of the parties in the *Schuster Case*, and in that case the court held:

"The owner of land on which surface water accumulates has no right to conduct the water by an artificial channel to a point on his own land in close proximity to the line, where it will inevitably permeate the surrounding soil and percolate through the same into his neighbor's land, to the permanent injury of the latter."

In that case the pond was drained by a tile drain, as here.

Following the *Schuster Case, supra,* came *Shaw v. Ward,* 131 Wis. 646, 111 N. W. 671. In that case a low place on defendant's land was drained by an artificial ditch onto the lands of another owner and from thence onto the lands of plaintiff. The water in the pond. on defendant's land was surface water, partly gathered from his own land and partly coming on his land from land of others.· There was no water in the pond from. springs. The surface water would gather on defendant's land to the depth of about one foot, and then overflow through a natural draw or ravine to reach the plaintiff's lands. By digging the ditch to allow the water to drain from defendant's low land, the surface waters no longer collected thereon but were deposited on the lower

lands of others, including the lands of plaintiff, more rapidly and in larger volume than before, to plaintiff's damage. This court there adopted the Massachusetts rule as the common-law rule. The court said:

"The following statement of the common-law rule early announced by the Massachusetts court in *Gannon v. Hargadon,* 10 Allen, 106, 109, has been quoted here with approval on many occasions: 'The right of an owner of land to occupy and improve it in such manner and for such purposes as he may see fit, either by changing the surface or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his own land is so situated with reference to that of adjoining owners that an alteration in the mode of its improvement or occupation in any portion of it will cause water, which may accumulate thereon by rains and snows falling on its surface or flowing onto it over the surface of adjacent lots, either to stand in unusual quantities on other adjacent lands, or pass into and over the same in greater quantities or in other directions than they were accustomed to flow.' "

Then, after discussing other cases in this court, the opinion continues as follows:

"While there is much authority that the common-law rule is not to be so understood as to permit an upper proprietor under any circumstances to expel surface water from his premises as it comes thereon in a stream, it is considered that the logical scope of such rule and its reasonable administration extends to doing so, where there is no other reasonable means of the landowner enjoying his property for the purposes for which it is adapted and especially where there is no great damage to the lands of others not avoidable by the exercise of the same right."

And finally, after a full discussion of the subject and prior decisions in respect thereto, the court summed up its conclusions, to wit;

"Respondents have a legal right, as we have seen, to rid their lands of surface water as it comes thereon from any source by permitting or causing the same, by such means as

may be reasonably necessary, to flow in the natural course of drainage to and onto adjoining lands, though the same may by natural or by artificial means for which they are not responsible reach and spread out over appellants' lands. In so doing they but exercise the common right of every person to defend his premises against surface water. If consequential damages, from the exercise of such right, occur to appellants, they are remediless except by the exercise of the same right, so far as conditions render that feasible, upon their own premises."

Such was the situation when the case of *Manteufel v. Wetzel,* 133 Wis. 619, 114 N. W. 91, came before the court, in which case it appears that there originally existed on the defendant's land a natural basin or reservoir in which large quantities of surface water were gathered. There was an ancient artificial ditch which had carried the water out of said basin toward the plaintiff's land. Thereafter the defendant, following the natural course of the surface water, excavated on his own land a shallow ditch from the termination of said ancient ditch to the common boundary between plaintiff and defendant, and as a direct result thereof the surface water from said depression passed through the ancient ditch and through the extension thereof to the plaintiff's land in greater quantities and with much greater rapidity and force than before, thereby rendering four or five acres of the plaintiff's land too wet for ordinary use as agricultural land and of less value than formerly. The plaintiff had judgment in the lower court for damages, and a mandatory injunction requiring the defendant to close the ditch he had dug from the end of the ancient ditch. The ancient ditch had become lawful through the statute of limitations. On appeal to this court, Judge TIMLIN writing the opinion, it was said:

"We have considered the cases [enumerating a large number, including *Pettigrew v. Evansville, Schuster v. Albrecht,* and *Shaw v. Ward* among them] and do here determine

that where the upper proprietor does no more than collect in a ditch, which ditch follows the course of the usual flow of surface water, the surface water which formerly took the same course toward the land of the lower adjacent proprietor, and causes to pass through this ditch the surface water which formerly took the same course but spread out over the surface, he has committed no actionable legal wrong, of which the lower proprietor can complain, or upon which such lower proprietor can maintain an action. In other words, causing surface water to flow in its natural direction through a ditch on one's own land instead of over the surface or by percolation as formerly, where no new watershed is tapped by said ditch and no addition to the former volume of surface water is caused thereby, except the mere carrying in a ditch what formerly reached the same point on defendant's land over a wider surface by percolation through the soil or by flowing over such wider surface, is not, when not negligently done, a wrongful or unlawful act."

The court there deliberately laid down the rule as stated, after having fully considered the *Pettigrew* (25 Wis. 223), *Schuster* (98 Wis. 241, 73 N. W. 990), and *Shaw* (131 Wis. 646, 111 N. W. 671) cases. If that rule is now to prevail, it is applicable to the instant case and results in a reversal of the judgment. In fact, the situation in the instant case is much more favorable to the defendant than in the *Manteufel Case*. Here the defendant did not construct a drain to deposit water on plaintiff's land or near it. The tile drain which he constructed deposited the water seventy-four rods distant from plaintiff's land in a natural draw, where it would spread out and reach plaintiff's land under substantially the same conditions as before the drain was constructed. There was no substantial body of water carried from defendant's land through the tile drain, more than had formerly flowed in the same course. The tile drain merely accelerated the disposition of the surface water, and to some extent undoubtedly increased the flow on plaintiff's land. But the situation is as though defendant had built the tile drain for a

short distance on his own land, and ended it on his own land a distance of seventy-four rods from the plaintiff's land, because he had acquired the right to build the drain on Niemeyer's land a distance of six rods from his own land.

It may be conceded, we think, that this court has not strictly followed the common-law rule as to the right of the owner of the dominant estate to cast surface waters upon the servient estate, but the rule as laid down in *Shaw v. Ward, supra,* and *Manteufel v. Wetzel, supra,* was deliberately adopted by this court, and, it being a reasonable rule, we think *stare decisis* should apply, since it has been a rule of property for over twenty years.

The plaintiff seeks to avoid the effect of the rule in this case by the claim that the rule is based on reasonableness, and that there is no showing in the present case that the defendant has been benefited by his act of drainage of his low land, and hence there was no reason why he should be permitted to cause any damage to plaintiff. The argument has merit; but while there was no finding of fact on that point, we think it follows as an inference from the undisputed facts that defendant's land was benefited by direct drainage instead of allowing the water to stand thereon for a few days and escape by percolation. There was no ill will by the defendant against the plaintiff, or intention to injure the plaintiff.

This is an action in equity, and we think the plaintiff's lands have not suffered such damages from the acts of the defendant as to entitle him to relief. The defendant could have filled his low place, under the rule of the common law, and thereby cast the same amount of water through the natural draw onto plaintiff's lands without liability to plaintiff. In a manner consistent with that principle, he did the same thing by use of tile drainage, and deposited the water upon neighboring land to which he acquired the right, and the water was there allowed to spread out and reach the

plaintiff's land in the same way that it formerly did, with the exception that the water ran off somewhat faster and to some slight extent in greater volume. Defendant was fairly within the rule laid down in the *Shaw* and *Manteufel* cases, *supra.*

The defendant was ordered to close up the drain to prevent the flow therefrom to go upon plaintiff's land. He attempted to comply by taking out one length of tile and blocking up the drain by placing a board in front of the remaining tile. This did not prove effectual. He was cited to show cause why he should not be punished for contempt. For some unexplained reason he did not appear on the return day in person or by counsel. Thereupon the court entered judgment and assessed a fine against him of $10 and the costs of the proceeding. Defendant appeals from this judgment.

The judgment of the court in the main action had not been appealed from at the time the fine was assessed, nor had a stay been granted. It therefore was the duty of the defendant to comply therewith and stop up the drain. Failing to do so he was properly punished for contempt.

*By the Court.*—The judgment punishing defendant for contempt is affirmed. The judgment enjoining defendant from maintaining the drain is reversed, with directions to dismiss the complaint. Appellant to have costs.

STEVENS, J., took no part.