Laur and wife, Appellants, vs. City of Milwaukee and another, Respondents.

*September 11—October 8, 1957.*

For the appellants there was a brief and oral argument by *Paul Pike Pullen* of Milwaukee.

For the respondent city of Milwaukee there was a brief by *Walter J. Mattison*, city attorney, and *Peter M. Stupar*, assistant city attorney, and oral argument by *Mr. Stupar*.

For the respondent Amalia Hackbarth Kuphal there was a brief by *Bendinger, Hayes & Kluwin* and *Becker, Kinnel, Doucette & Mattison*, all of Milwaukee, and oral argument by *John A. Kluwin*.

BROWN, J. Lands of the plaintiffs are separated from those of defendant Hackbarth by the right of way of the Chicago & North Western Railroad. In their original state both parcels were low and swampy. Surface water originally flowed from the Laur to the Hackbarth property. The railroad's right of way which separates plaintiffs' property from that of Hackbarth is 100 feet wide. In 1890 the railroad built an embankment on it to carry its tracks across the lowland. The embankment is approximately 50 feet wide and 15 feet higher than the natural surface of the land.

Sec. 88.38, Stats., provides:

"CULVERTS AND OUTLETS TO PERMIT NATURAL DRAINAGE. (1) Whenever any county, town, city, village, railway company, or the state highway commission shall have heretofore constructed and now maintains or hereafter shall construct and maintain any public highway . or road grade through, over, and across any marsh, lowland, or other natural depression over or through which surface water

naturally flows and percolates, and the stopping of the said flow and percolation of said water by said highway or road grade cause any crop or land to be flooded, water-soaked, or otherwise damaged, such county, town, city, village, railway company, or the state highway commission shall construct, provide, and at all times maintain a sufficient ditch or ditches, culverts, or other outlets to allow the free and unobstructed flow and percolation of said water from said lands, and to prevent said lands from becoming flooded, water-soaked, or otherwise damaged by said water. The foregoing shall not apply to public highways or road grades now or hereafter used to hold and retain water for cranberry purposes.

"(2) Any county, town, city, village, or railway company which shall fail to provide such necessary ditches or culverts or other outlets shall be liable for all damages caused by reason of such failure or neglect."

Obedient to the statute the railroad installed a culvert under its embankment. Through this culvert the Laur surface waters escaped, flowing first from Laurs' property to that of the railroad and thence to and over the Hackbarth's.

Pursuant to an agreement between Hackbarth and defendant city in 1951 or 1952 the city commenced to fill the low-lying Hackbarth land. This built the level of the Hackbarth property up to the level of the railroad embankment. Thereafter the Laur surface water no longer flowed over Hackbarth's land but, on the contrary, Laur testified that as early as 1952 the Hackbarth land drained into the culvert and onto Laurs' property, causing the damage of which plaintiffs complain.

In 1955 Mr. and Mrs. Laur brought the present action against Hackbarth and the city. Their complaint alleged that prior to 1922 defendant Hackbarth cut and thereafter maintained a ditch across her land which ditch drained plaintiffs' land and made it dry and serviceable; that plaintiffs and their predecessors in title had used the ditch for that purpose adversely and continually for thirty years

prior to 1952 when, by the filling operation just referred to, the defendants obstructed the ditch and stopped the flow of plaintiffs' surface water through it.

Wisconsin has long adhered to the common-law, or "common enemy," doctrine ·in its treatment of surface waters. In *Borchsenius v. Chicago, St. P., M., & O. R. Co.* (1897), 96 Wis. 448, 450, 71 N. W. 884, we stated the principle thus: "Surface water is recognized as a common enemy, which each proprietor may fight off or control as he will or is able, either by retention, diversion, repulsion, or altered transmission; so that no cause of action arises for such interference, even if some injury occurs, causing damage."

In thus repelling Laurs' surface water neither Hackbarth nor the city which filled Hackbarth's land with Hackbarth's permission, incurred liability to the Laurs for their consequential damage.

Because of the fill it appears that Hackbarth's surface water now comes upon Laurs' lands which would not have happened except for the change in the elevation of the Hackbarth property. This presents a somewhat different question, in that we must consider the altered flow of Hackbarth's surface water as well as the mere repulsion of Laurs'.

Pertinent to this situation is our approval of *Gannon v. Hargadon* (1865), 92 Mass. (10 Allen) 106, 109, in *Connell v. Stark* (1900), 108 Wis. 92, 98, 83 N. W. 1092, saying:

" 'The right of an owner of land to occupy and improve it in such manner and for such purposes as he may see fit, either by changing the surface or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his own land is so situated with reference to that of adjoining owners that an alteration in the mode of its improvement or occupation in any portion of it will

cause water, which may accumulate thereon by rains and snows falling on its surface or flowing onto it over the surface of adjacent lots, either to stand in unusual quantities on other adjacent lands, *or pass into and over the same in greater quantities or in other directions than they were accustomed to flow.' "* (Our emphasis.)

In *Shaw v. Ward* (1907), 131 Wis. 646, 657, 111 N. W. 671, we repeated the foregoing sentence and added that the principle cannot be legitimately confined to noninterference.

In *Watters v. National Drive-In* (1954), 266 Wis. 432, 63 N. W. (2d) 708, the complaint alleged that the defendant constructed a drive-in theater and in so doing he caused the land to be graded and filled up in such a manner as to change its natural contour so that surface waters which formerly had drained off in another direction now drained onto the adjoining lands of plaintiff. In sustaining a demurrer to the complaint, we said (p. 436):

"Under the established law of this state the plaintiffs have no cause of action for damages caused by drainage of surface waters, either because of the installation of tile drains *or by changing the natural flow of such waters.*" (Our emphasis.)

These examples from our own jurisdiction bring us to the conclusion that neither the city, which elevated the land, nor Hackbarth, the owner who permitted the city to do so, are liable to the Laurs for injuries the Laurs sustained by reason of changes so caused in the flow of surface water. For outside authority, see the citations in Anno. 12 A. L. R. (2d) beginning at page 1341, to the proposition, as there stated:

"In the absence of an easement by grant or prescription, it appears that in those jurisdictions following the 'common enemy' rule as to surface waters any act of either an upper or lower proprietor raising the surface of his land will not

create any liability to other landowners because of a diversion or accentuation of the flow of surface waters."

We conclude that a change in the direction of the natural drainage of surface water caused by an owner's alteration of the contour or elevation of his land gives no right of action against him on the part of a proprietor over whose land the surface water is thus caused to flow where there is no collection of surface water followed by a discharge thereof upon the adjacent lands, as in *Pettigrew v. Evansville* (1870), 25 Wis. 223.

So much for defendants' interference with the original drainage. Plaintiffs seek to avoid our conclusion by contending that they had acquired prescriptive rights to have their water carried off by a ditch constructed and maintained for that purpose across the Hackbarth lands for more than twenty years. Laur and his son testified that in 1947, 1948, and 1950 they saw a ditch much grown up with weeds extending from the right of way near the culvert into the Hackbarth property for about 25 feet. Defendant Hackbarth testified that neither she nor anyone else had ever constructed or maintained any ditch whatever and denied its existence. Other witnesses corroborated her.

Granting that a prescriptive right to the continuance of a drainage ditch may be acquired by twenty years of adverse user (*Wilkins v. Nicolai* (1898), 99 Wis. 178, 74 N. W. 103), there is no evidence in the present case that the alleged ditch existed so long. Laur claimed to have discovered it first in 1947. No one else saw it that early. A finding that it existed for more than twenty years would have nothing but speculation on which to rest. No issue for a jury was presented.

A verdict for defendants was properly directed.

Before plaintiffs rested they moved to amend their complaint by adding a new cause of action to state that what

the defendants obstructed was a natural watercourse, not an artificial drain. The trial court refused to allow the amendment on the ground that it introduced totally new issues and was not timely. The motion is addressed to the discretion of the trial court. We find no abuse of discretion in the denial of the motion.

*By the Court.*—Judgment affirmed.